IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 96-684

1999 MT 210

296 Mont. 6

986 P.2d 395

_____

WILLIAM GOLLEHON,

Petitioner,

v.

STATE OF MONTANA,

Respondent.

**O P I N I O N**

**A N D**

**O R D E R**

_____

¶1 The Petitioner, William Gollehon, filed his initial Petition for Postconviction Relief pursuant to §§ 46-21-101 through -201, MCA, on December 2, 1996. The State responded by moving to dismiss the petition for failure to state a claim for relief.

¶2 The Petitioner was convicted in the District Court of Powell County of deliberate homicide by accountability and sentenced to death on March 19, 1992. The victim of the homicide, Gerald Pileggi, was severely beaten during a softball game in the prison exercise yard and died from the injuries. The Petitioner's conviction and death sentence were affirmed by this Court in *State v. Gollehon*, 262 Mont. 1, 864 P.2d 249 (1993), *cert.*

*denied*, 513 U.S. 827, 115 S. Ct. 95, 130 L. Ed. 2d 45 (1994), *reh'g denied*, 274 Mont. 116, 906 P.2d 697 (1995).

¶3 On March 24, 1995, the District Court conducted a hearing to set an execution date. During the hearing, Gollehon requested that the prosecution disclose what assistance, if any, it provided to its two key witnesses, J. D. Armstrong and William Arnot, to be released early from their sentences. Gollehon represented to the court that he had received information that the State had assisted both witnesses to obtain early releases.

¶4 During the hearing, the District Court granted Gollehon's request for discovery of pretrial agreements between the State and the witnesses but denied the request as to post-trial assistance or agreements. The State later disclosed that there were no pretrial agreements to assist the witnesses.

¶5 In his initial Petition for Postconviction Relief, Gollehon asserts that his rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated. Petitioner argues that the State has a duty to disclose any advantageous treatment that witnesses Armstrong and Arnot may have received post-trial. The Petitioner further alleges that any benefits that these witnesses received in return for testifying against him cast doubts upon their credibility. He argues that such a disclosure could aid him in convincing the District Court, this Court, or both, that he is entitled to a new trial or a new sentencing hearing to reevaluate the death sentence imposed.

¶6 On March 25, 1997 this Court, upon review of Gollehon's petition and the State's response, concluded that Petitioner was entitled to the discovery of any postconviction agreements the State made with witnesses Armstrong and Arnot to provide assistance to them and the exact nature of any assistance provided to these witnesses. We further concluded that once such information is disclosed, the petitioner would be entitled to amend his petition should he so desire.

¶7 Discovery was subsequently pursued, most notably, the depositions of witness Armstrong and attorney Wendy Holton. Holton, a private attorney who specializes in criminal matters, was contacted by Assistant Attorney General John Connor to assist Armstrong in his effort for an early release.

¶8 On March 1, 1999, Gollehon filed his Amended Verified Petition for Postconviction Relief (Amended Petition) pursuant to §§ 46-21-101, and -203, MCA. The Attorney

General responded by moving to dismiss Gollehon's Amended Petition. Both the Petitioner and Attorney General have requested oral argument.

¶9 The Amended Petition raises six claims for relief. We shall address each claim for relief in order. Before doing so, however, we deem it first appropriate to address Gollehon's omnibus contentions and his general allegations of constitutional violations.

¶10 The Petitioner alleges that his rights under both the United States and Montana Constitutions were compromised, specifically those rights found in the Montana Constitution, Article II, Sections 16, 17, 19, 22, 24, 26, 28 and 34 and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. In these omnibus contentions, however, the Petitioner fails to cite to authority or offer specific argument to support his conclusionary statements. Thus, lacking any specific arguments or authority to support these contentions, we will not address them any further. *See* M. R. App. P. 23(a)(4); *State ex rel. Booth v. Montana Twenty-First Judicial Dist.*, 1998 MT 344, ¶ 35, 972 P.2d 325, ¶ 35.

## First Claim for Relief

¶11 Gollehon alleges that there were undisclosed pretrial agreements in exchange for Armstrong's testimony. Gollehon argues that the following agreements existed:

1. Witness Armstrong was promised by prison officials that he would be a trustee at the Powell County Jail;

2. Assistant Attorney General John Connor promised Armstrong he would not go back to Montana State Prison; and

3. Armstrong was promised that he would be housed in the Powell County Jail until he earned parole, prerelease, or discharge.

¶12 Gollehon further alleges that the State failed in its duty to disclose certain gratuitous benefits conferred upon Armstrong, post-trial, and in the absence of any pretrial agreement.

¶13 Gollehon asserts that the disclosure requirements under § 46-15-322(1)(e), MCA, and the prosecution's responsibilities set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), compel such disclosure. Gollehon further contends that under §§ 46-15-327 and 46-18-310, MCA, the State had a continuing duty to disclose any

gratuitous benefits Armstrong received, post-trial, because such information would tend to reduce or mitigate his sentence.

¶14 The suppression by the prosecution of material evidence favorable to the accused violates the defendant's Fourteenth Amendment guarantee of due process. *See Brady*, 373 U.S. at 86, 83 S. Ct. at 1196, 10 L. Ed. 2d at 218. This duty applies to impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481, 490 (1985). The prosecution may violate the principles set forth in *Brady* by failing to disclose agreements with a prosecution witness in exchange for testimony. Promises made to a witness in exchange for testimony go directly to the credibility of the witness. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, L. Ed. 2d 104, 108-09 (1972). The duty of disclosure is dependent, however, upon an agreement or understanding with tangible benefits. Where there is no agreement, there is no duty to disclose. *See Alderson v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994), *cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

¶15 To establish a *Brady* violation, the petitioner must establish that: (1) the State possessed evidence, including impeachment evidence, favorable to the defense; (2) the petitioner did not possess the evidence nor could he have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. *See Mills v. Singletary*, 63 F.3d 999, 1014 (citation omitted) (11th. Cir. 1995), *cert. denied*, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996).

¶16 Gollehon argues that the State made a deal with key witness Armstrong which was never disclosed. He argues that in exchange for Armstrong's testimony, the State reinstated his good time, and removed his dangerous offender status. Gollehon argues further that attorney Wendy Holton, contacted by Assistant Attorney General John Conner to assist Armstrong, and Conner assisted in getting Armstrong released by testifying on his behalf and writing letters to the Parole Board. He also claims that Warden McCormick aided by unilaterally overruling a prison committee recommendation that denied Armstrong's restoration of good time.

¶17 Petitioner relies, in part, on a letter dated December 31, 1991 from witness Armstrong to Connor. The Petitioner argues that Armstrong states in the letter that prison officials represented to him before trial that he would be a trustee at the Powell County Jail.

¶18 A complete review of the letter, however, discloses nothing about what was told to Armstrong. In fact, in one part of the letter Armstrong indicates that he did not believe that he had been promised trustee status in exchange for his testimony. In another part of the letter, he specifically states that he did not expect to receive any special treatment for anything that he had done. Although, Armstrong desired to be a trustee at the jail, he has failed to present any convincing evidence of an undisclosed deal of trustee status in exchange for his testimony, pretrial.

¶19 Holton testified in her deposition that she represented to the Parole Board in the clemency application, that Armstrong provided his testimony without requesting any benefit or consideration other than protection.

¶20 Gollehon relates to other documents, including a letter written by Armstrong to Warden McCormick, dated November 23, 1991. Armstrong was requesting that he be reclassified so that he could work as a trustee in the Powell County Jail. McCormick's response, however, indicates that his request to be reclassified was rejected.

¶21 The Petitioner also refers to a letter dated February 2, 1992 that Armstrong wrote Assistant Attorney General Connor after he was transferred back to Montana State Prison. In that letter, Armstrong asserts that Connor promised him that he would never go back to the prison.

¶22 The Petitioner, however, has not presented any evidence that Connor made the above statement to Armstrong prior to trial or in exchange for his testimony. Further, in the same letter, Armstrong states at two different times that Connor did not break any promise to him.

¶23 Gollehon also refers to a letter dated October 24, 1991 from Armstrong to an unnamed prison official where he asserts that he was promised things before trial. In his deposition, however, Armstrong explained that it probably related to a promise of guaranteed safety. Such a promise was disclosed to the jury during Armstrong's testimony at trial.

¶24 It is important to note that the jury which convicted Gollehon of this homicide was aware that Armstrong had been promised safety in return for his testimony. At trial, evidence was presented that Armstrong was receiving assurances of safety by the State in the event he testified. Gollehon had an opportunity to explore what these "safety" measures might entail during trial. On August 30, 1991, Armstrong voluntarily provided

defense counsel an interview which was tape-recorded and transcribed. During this interview, Armstrong stated that he came forward with testimony because he felt that he should and not to get something in return. He also stated that the State assured him that his safety would be guaranteed but he did not know how that would be accomplished. During trial, Armstrong testified that he was not promised anything in return for his testimony other than a guarantee of his safety. He testified that every step would be taken to guarantee his safety, and further, no one assured him assistance in obtaining parole.

¶25 In summary, we conclude that the Petitioner has not established the existence of any undisclosed pretrial agreement between the State and Armstrong in exchange for his testimony. The Petitioner has established no more than what was presented to the jury during his trial; Armstrong was assured his personal safety if he testified. This was corroborated in Armstrong's deposition taken on August 18, 1998, when he testified that the only guarantee he received was for his safety by being housed in protective custody in the Powell County Jail in Deer Lodge. Although we concede that the State went to great lengths to assist Armstrong in his post-trial efforts for early release, we see nothing in the pretrial conduct of the prosecution that would constitute a *Brady* violation.

¶26 In regard to undisclosed post-trial benefits, Gollehon asserts that Connor contacted Holton after his trial to ask if she would assist Armstrong before the Parole Board. He then asserts that Connor wrote a letter to the Parole Board in support of Armstrong's application for clemency; and that when the Board denied the application, Connor and Warden McCormick went to "great lengths" to secure Armstrong's release, culminating in Governor Stephens' grant of clemency, which removed his "dangerous" designation and made him prematurely eligible for parole. Gollehon asserts that the failure to disclose the above events which occurred post-trial and in the absence of a pretrial agreement, violated his *Brady* due process rights.

¶27 In order for post-trial assistance to be relevant, there must have been an agreement for parole before trial in order to support a *Brady* violation. In the absence of evidence of a pretrial agreement, there can be no *Brady* violation because no evidence was suppressed from the jury. Armstrong testified at his deposition that, prior to trial, he was never promised restoration of any good time. He said the subject never came up. Again, any assistance that occurred after trial, must be as a result of a pretrial agreement to support a *Brady* violation.

¶28 Gollehon further argues that the State's failure to disclose Armstrong's premature

release violates his constitutional rights because he could have argued to this Court and a sentencing court that the benefits cast doubt on Armstrong's credibility. He asserts that such evidence could have been established as a "mitigating circumstance" in terms of his sentence and could have been used to argue "lingering doubt" of his guilt. In support he cites *Franklin v. Lynaugh*, 487 U.S. 164, 174, 108 S. Ct. 2320, 101 L. Ed. 2d 155 (1988).

¶29 Mitigating evidence includes evidence that relates to a defendant's character, background, or the circumstances of the offense before the sentencing judge that militate against imposing the death penalty. *See State v. Smith,* 280 Mont. 158, 931 P.2d 1272, 1282 (1996), *cert. denied*, 522 U.S. 965, 118 S. Ct. 410, 139 L. Ed. 2d 314 (1997). However, lingering doubt of the defendant's guilt is not an appropriate mitigating circumstance because it is not an aspect of the defendant's character, record, or the circumstance of the offense. In *Franklin*, 487 U.S. at 174, 108 S. Ct. at 2327, 101 L. Ed. 2d at 166, the United States Supreme Court stated the sentencing judge may not be precluded from considering "any aspect of a defendant's character or record and any of the circumstances of the offense." The Court noted, however, that capital juries, in the sentencing phase, were not mandated to reconsider their "residual doubts" over a defendant's guilt. Such doubts do not relate to the defendant's "character," "record," or a "circumstance of the offense." *See Franklin*, 487 U.S. at 174, 108 S. Ct. at 2327, 101 L. Ed. 2d at 166.

¶30 We further conclude that such evidence would not have been considered by this Court under our function dictated by § 46-18-310, MCA. We are required to determine pursuant to § 46-18-310(2), MCA, whether the evidence supports the sentencing judge's finding of the existence or nonexistence of the aggravating or mitigating circumstances. *See Smith*, 280 Mont. at 170, 931 P.2d at 1279.

¶31 The First Claim for Relief is denied.

## Second Claim for Relief

¶32 Gollehon argues in his Second Claim for Relief that there was overwhelming post-trial evidence that Armstrong perjured himself at trial. This, according to the Petitioner, resulted in the deliberate deception of the court and jurors by the presentation of false evidence, resulting in a violation of his rights under the Fourteenth Amendment.

¶33 To prevail on this claim, Gollehon must establish that: (1) the witness's testimony was

actually false; (2) the testimony was material to the verdict; and (3) the prosecutor knew or believed the testimony to be false. *See Fuller v. Johnson*, (5th Cir. 1997), 114 F.3d 491, 496, (5th Cir. 1997) *cert. denied*, ____ U.S. ____, 118 S. Ct. 399, 139 L. Ed. 2d 312 (1997). False evidence is "material" only if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. *See Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996), *cert. denied*, 519 U.S. 1094, 117 S. Ct. 773, 136, L. Ed. 2d 718 (1997).

¶34 Gollehon argues that Armstrong's post-trial behavior "never changed," therefore, Armstrong must have lied at trial about his reasons for coming forward. Holton, on the other hand, testified that she believed that Armstrong had made efforts to change his life and Connor believed that Armstrong was sincere in his rehabilitation efforts and that he provided truthful testimony of the Pileggi trial. The fact that Armstrong failed at rehabilitation is not sufficient to demonstrate that he lied at trial.

¶35 Gollehon obtained an affidavit from Monty Carrillo stating that Armstrong immediately violated his parole conditions. However, Carrillo does not state that Armstrong's testimony at trial was false. Carrillo merely speculates and draws inferences from Armstrong's subsequent conduct on parole. Gollehon also refers to information contained in an affidavit by Montana State Senator Thomas Keating. However, Keating concedes that he does not know the details of Armstrong's trial testimony or whether it was true or not.

¶36 Gollehon has not sustained his burden to establish that Armstrong's trial testimony was actually false or that the prosecutor knew or believed it to be false. The Petitioner infers that Armstrong must have lied at trial about his reasons for coming forward. The fact that Armstrong's efforts at rehabilitation were not successful is not sufficient to demonstrate that he lied at trial.

¶37 The Second Claim for Relief is denied.

## Third Claim for Relief

¶38 Gollehon asserts that the State's alleged failure to disclose the substantial benefits it gratuitously conferred upon witness William Arnot, post-trial, and in the absence of a formal pretrial agreement, violated his *Brady* due process rights.

¶39 The Petitioner points out that Arnot has a lengthy criminal record and has escaped

from custody at least three times. During one escape he possessed a deadly weapon. Twelve days after receiving an additional prison term for this offense, Arnot came forward for the first time and stated that he witnessed the Pileggi homicide. Arnot was immediately removed from prison and placed with Armstrong in a local jail. Arnot testified that he and Armstrong discussed the case and he came forward because it was "the right thing to do."

¶40 After Arnot testified, Connor inquired about his prerelease designation. Even though Arnot's most recent escape made him ineligible for prerelease, Department of Corrections employee Jim Pomroy arranged for an exception to be made. Arnot again escaped custody from the prerelease center. Arnot later turned himself in to Connor and was transported to the Jefferson County Jail.

¶41 Two months later, Pomroy requested that the Parole Board consider Arnot for parole because he was "the primary witness in the Pileggi murder trial." The Board granted Arnot parole and he was released one month later. After his release, Arnot continued to engage in criminal conduct and again escaped from official detention. Arnot was apprehended and sentenced to an additional two years in prison and his parole was revoked. Arnot was discharged on May 15, 1996, and has been arrested at least twice since then.

¶42 Gollehon asserts, as he did with Armstrong, that the State's failure to disclose alleged post-trial benefits to Arnot, in the absence of any pretrial agreement, violates his constitutional rights because he could have argued to the sentencing court and this Court, on appeal, that the benefits Arnot received directly impacted his credibility. As with Armstrong, in the absence of proving a pretrial agreement in exchange for testimony, gratuitous post-trial benefits conferred on Arnot do not constitute a *Brady* violation.

¶43 The Third Claim for Relief is denied.

## Fourth Claim for Relief

¶44 Gollehon contends that the State is responsible for an alleged "substantial delay" in bringing his case to a "full and final conclusion," in violation of his rights under Article II, Sections 17 and 22 of the Montana Constitution and the Eighth and Fourteenth Amendments of the United States Constitution, and that his death sentence should be vacated. Essentially, the Petitioner argues that an unusually long period of time on death row implicates the constitutional ban on cruel and unusual punishment.

¶45 Petitioner complains that the *Brady* claim is causing the alleged delay and it is the State which is responsible for lengthy litigation of the claim. His argument finds its genesis in *Lackey v. Texas*, 514 U.S. 1045, 115 S. Ct. 1421, 131 L. Ed. 2d 304 (1995), a denial of certiorari, where Justices Stevens and Breyer suggested that such an argument would "benefit from further study" and that the issue should be postponed until it has been addressed by other courts.

¶46 In *Smith*, 280 Mont. at 183-85, 931 P.2d at 1287-88, we rejected a claim that the defendant's rights of due process and to be free from cruel and unusual punishment were violated because of the amount of time he spent on death row and the number of sentencing hearings held in his case. Smith also relied on Justice Stevens' memorandum in *Lackey*.

¶47 Gollehon's argument is premised on the contention that his length of time on death row was caused by a delay in the post-trial proceedings caused by the State. Yet, despite this Court's urging on two occasions to file his postconviction petition, the Petitioner continued the delay by filing a federal habeas corpus petition and an amended petition which included a *Brady* claim which he knew had not been exhausted in the state courts. The federal court noted this and, at the Petitioner's request, stayed it pending the exhaustion of his *Brady* claim in the state court. Gollehon ultimately filed his petition on December 2, 1996, four years and nine months after the date of conviction, coming just under the then five-year deadline. Under the circumstances, we conclude that the majority of the delay in this case was caused by the Petitioner pursuing his constitutional and statutory rights and not caused by the actions of the State.

¶48 The Fourth Claim of Relief is denied.

## Fifth Claim for Relief

¶49 Gollehon requests that we reconsider our rulings and judgment with regard to issues Nos. 5 and 7 of his direct appeal, because the State claims in federal court that he did not present a due process and fair notice claim under the Fourteenth Amendment with regard to whether the death penalty could be applied for deliberate homicide by accountability.

¶50 The Petitioner focuses on the dissent of Justice Gray in his direct appeal and concludes that this Court understood and addressed his due process and fair notice claim when it considered his argument under the rule of lenity. Although the Petitioner states

that he is confident that the federal courts will rule that these claims were addressed, he requests that we revisit claims Nos. 5 and 7 of his direct appeal for the following reasons: (1) to give this Court every opportunity to pass on a substantial and important constitutional claim before it reaches a federal venue; (2) to clarify how this Court actually dealt with these issues; (3) and because consideration of a matter previously decided in direct appeal is permissible under the 1995 postconviction statutes.

¶51 We decline to again address these issues. Postconviction relief is not available upon claims that a petitioner could have raised on direct appeal. *See* § 46-21-105(2), MCA. If the Petitioner failed to adequately raise these issues in his direct appeal, he is procedurally barred from doing so now. If they were adequately raised, the doctrine of *res judicata* bars relitigation of the issues.

¶52 The Fifth Claim for Relief is denied.

## Sixth Claim for Relief

¶53 Gollehon maintains that this Court should reconsider its rulings on issues Nos. 5 and 7 because at the time the case was decided, this Court was not properly constituted pursuant to §§ 3-2-101, 3-5-201, 3-1-1010 and -14, MCA, Article II, Sections 4, 13, 16, 17, 34, and Article VII, Section 3, of the Montana Constitution.

¶54 Gollehon contends that the substitution at oral argument of District Judge Lympus for Justice McDonough, violated the Montana Constitution because Justice McDonough suffered neither "disqualification" nor "disability" and merely failed to participate because of his retirement from the Court. Therefore, issues Nos. 5 and 7 of Gollehon's appeal were resolved in part by a judge who had no authority or jurisdiction to act. To the extent that the Court was lawfully constituted, issues Nos. 5 and 7 were resolved by an equally divided court. Therefore, these issues should be determined by the present lawfully constituted Court. The Petitioner asserts that since this is a matter of jurisdiction of this Court, the issued can be raised at any time. *See* § 46-13-101(3), MCA.

¶55 Gollehon was aware of the substitution of Judge Lympus prior to oral argument, yet failed to raise this issue at oral argument or in his Petition for Rehearing. Postconviction relief is not available upon claims that a petitioner could have raised on direct appeal. We further note that § 46-21-105(2), MCA, contains no exception to the application of the procedural bar for issues related to "jurisdiction." Also, § 46-13-101(1), MCA, relates to

objections which are required to be made pretrial, and therefore is not relevant here.

¶56 The Sixth Claim for Relief is denied. Therefore,

¶57 IT IS HEREBY ORDERED that the Amended Petition for Postconviction Relief is denied.

¶58 The Clerk of Court is directed to mail a true and correct copy of this order to all parties of record.

¶59 DATED this 9th day of September, 1999.

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER