No. 04-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 318

STATE OF MONTANA,

      Plaintiff and Respondent,

    v.

JOHN (JOHNNY) DARRELL JOHNSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                      In and for the County of Lewis and Clark, Cause No. BDC 2003-92,
                      The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Randi Hood, Chief Public Defender, Helena, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; C. Mark Fowler,
            Assistant Attorney General, Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney; Mike Menahan, Deputy
            County Attorney, Helena, Montana

                  Submitted on Briefs:  May 17, 2005

                        Decided:  December 19, 2005

Filed:

_____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     John (Johnny) Darrell Johnson (Johnson) appeals from a judgment entered in the First Judicial District Court, Lewis and Clark County, imposing a life sentence. We affirm.

¶2     We restate and address the issue on appeal as follows: Must the judgment against Johnson be vacated because the prosecution failed to disclose exculpatory information in its possession to the defense a sufficient time before trial?

¶3     On March 8, 2003, at approximately 2:35 p.m., the Lewis and Clark County Sheriff's Office received a call from a Patricia Granby (Granby). Granby said Johnson was pushing her around, and over the phone the dispatcher heard Johnson say that Granby had better leave before the bullets start flying. Granby left the residence.

¶4     Granby explained to law enforcement that Johnson had threatened her by pointing a gun at her. She also said that Johnson was carrying multiple weapons around the house, and ammunition was found at multiple windows. Johnson refused to come out of the house and threatened to shoot the officers.

¶5     After evacuating the neighbors, warrants to arrest Johnson and search the house were obtained. Tear gas was shot into the house at two different times. The second time tear gas was deployed, Johnson fired a shotgun from inside the house and some pellets hit a deputy sheriff and a police officer. Johnson surrendered at approximately 4:15 a.m. the next morning, and he was taken into custody.

¶6     Johnson was charged with assault with a weapon, two counts of attempted deliberate homicide, criminal possession of dangerous drugs, threats and other improper influence in official and political matters, and criminal endangerment. A jury trial was held in September

2

2003.

¶7 On the first day of trial, Johnson filed a motion in limine to preclude the State from using a diagram that depicted the scene where the incident took place. This diagram included measurements and notations generated by a laser measuring program called Total Station. The defense objected to this diagram because it had no ability to review the exhibit, interview the Highway Patrol officers who ran the program, determine if the program was run correctly, research the reliability of the program or seek expert assistance for the interpretation of the program. The essence of Johnson's objection was that use of the diagram was unfair surprise and it could not fairly be allowed into evidence because his counsel had no opportunity to prepare to cross-examine and impeach the state's witnesses, or to attack the results generated by the Total Station program. Johnson did not argue that this evidence may have been exculpatory.

¶8 The motion in limine also asked the District Court to preclude the State from using certain photographs on the grounds that they had not been disclosed to the defense until shortly before trial. Johnson did not argue that this evidence may have been exculpatory.

¶9 The District Court held an evidentiary hearing on these matters on September 9, 2003. In considering the diagram, the following exchange occurred:

> THE COURT: So do you have anything else to say on the Total Station business? I don't think we need to–in my view you got it too late, but I think they can still use a similar chart without the Total Station numbers. They can draw in what Detective Olson did and they can end up–I think it is going to be similar, but I guess I think the Total Station numbers should not be shown to the jury since you got them late Friday. Do you have anything to add on that?
>
> JOHNSON'S COUNSEL: That is what I was asking for.

3

THE COURT: Well, that is what you have. So I think you can–you know, I'll direct you, Mr. Gallagher, to cross off the numbers.

This decision seemed to satisfy Johnson, and he does not indicate that this decision was not followed.[1] Also, at the evidentiary hearing, Johnson did not argue that the evidence objected to may have been exculpatory.

¶10 Concerning the photographs, Johnson's counsel objected to four or five photographs she had never seen. There was some dispute whether these photographs were made available to her. At the evidentiary hearing, Johnson did not argue that this evidence may have been exculpatory.

¶11 Johnson was found guilty on all counts except for assault with a weapon. Johnson was sentenced to life in prison on November 6, 2003. This appeal followed.

¶12 Suppression of material evidence favorable to the accused by the prosecution violates a defendant's Fourteenth Amendment guarantee of due process. *See Brady v. Maryland* (1963), 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218. In Montana, a party seeking to establish a *Brady* violation must establish the following:

> (1) the State possessed evidence, including impeachment evidence, favorable to the defense; (2) the petitioner did not possess the evidence nor could he have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different.

*Gollehon v. State*, 1999 MT 210, ¶ 15, 296 Mont. 6, ¶ 15, 986 P.2d 395, ¶ 15. The burden

---

[1] He does claim that witnesses testified to trajectories and measurements based on the Total Station, but we need not consider this claim since he fails to cite to where such testimony occurred in the record. *See State v. Kearney*, 2005 MT 171, ¶ 16, 327 Mont. 485, ¶ 16, 115 P.3d 214, ¶ 16; Rule 23(a)(4), M.R.App.P.

4

of establishing a *Brady* violation in the present case rests with Johnson. *Gollehon*, ¶ 15.

¶13 This Court has made it clear that a party's theory may not change on appeal. This is because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it never had the opportunity to consider. *State v. Mallak*, 2005 MT 49, ¶ 31, 326 Mont. 165, ¶ 31, 109 P.3d 209, ¶ 31.

¶14 The present case involves a change in theory on appeal. At the District Court, Johnson objected to the diagram because the information generated by the Total Station program was unfair surprise. Johnson objected to the photographs for basically the same reason. At no time before the District Court did Johnson object to either the diagram or the photographs because they were, or could have been, exculpatory evidence.

¶15 Even were we to consider Johnson's *Brady* arguments, he makes no showing that the information generated by the Total Station program would in any way be exculpatory. He merely suggests that the information could be used to refute the State's contention that he intended to shoot at the officers, but he fails to explain how. Since Johnson has failed to show that the numbers generated by the Total Station were favorable to him, he cannot establish a *Brady* violation regarding the diagram.

¶16 Also, Johnson failed to provide us with a copy of the photographs in question. We will decline to address an argument when the party fails to provide a sufficient record to enable us to rule upon the issue raised. Rule 9(a), M.R.App.P.; *Gentry Mont. Enters., Inc. v. McDonald*, 2004 MT 322, ¶ 39, 324 Mont. 67, ¶ 39, 101 P.3d 767, ¶ 39.

¶17 Further, Johnson makes no showing that the photographs are in any way exculpatory. Since Johnson has failed to show that the photographs were favorable to him, he cannot

5

establish a *Brady* violation relating to their late receipt by his counsel.

¶18     Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS