DA 06-0550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 219N

IN RE THE MARRIAGE OF
VIRLENE GEAN MAXIE,

        Petitioner and Respondent,

   v.

HENRY STEVENSON MAXIE,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. CDR 05-016
                    Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Tonja D. Schaff, Falcon, Lester & Schaff, P.C.,
                Great Falls, Montana

        For Respondent:

                Virlene Gilcher, pro se, Great Falls, Montana

Submitted on Briefs:  August 9, 2007

Decided:  September 5, 2007

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(d), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Henry Maxie and Virlene Maxie (now Virlene Gilcher) were married on December 13, 2003, in Texas. Henry and Virlene were both in the armed forces when they met and married. The parties had marital difficulties, as evidenced by their many heated arguments. On at least three occasions, the police responded to these domestic disputes. In February of 2004, the police were called and observed Henry attempting to drink bleach in an apparent suicide attempt. He was then placed in a military hospital for two to three weeks. In May of 2004, Henry and Virlene had another heated argument that turned somewhat physical. Virlene bit and pushed Henry. Henry admitted that he put his knee into Virlene's stomach, though he maintains that he was only trying to prevent her from leaving and that she ran into his knee as she tried to force her way past him. The police were again called, and when they entered they found Henry in the bedroom with a bottle of floor wax that he was apparently going to drink. The police placed Henry back in the hospital, though it appears that he did not stay for long. Henry testified that he was not trying to kill himself but merely trying to get his wife's attention.

¶3     After the May 2004 episode, Virlene and Henry separated. Virlene moved to Great Falls and Henry moved to Indianapolis. Virlene, at the time, was pregnant. Henry did not initially support Virlene or concede that the child was his. Consequently, Henry was not there, on January 12, 2005, when his son was born. Virlene chose to name her son Oliver Gilcher, using her maiden name (Gilcher) as his surname. Though he was not at the birth, Henry began to make child support payments once a paternity test showed that Oliver was indeed his son.

¶4     Virlene filed for dissolution of marriage in Montana. The trial was held on May 25, 2006. The District Court, after Henry had failed to appear for the pretrial conference, scheduled trial for an hour, assuming that Henry would not show. When Henry did appear with counsel, the court, shortly after 9 a.m., asked if an hour was enough, and both parties suggested that more time would be appropriate, but that they should be done by lunch. The court decided to continue with the trial and allot each party one hour. Henry's counsel responded, "[t]hank you, Your Honor" and did not object to the time restraint. Because the parties negotiated during a break, the actual time of trial was around one hour and forty minutes.

¶5     The court then issued a decree of dissolution and parenting plan. On appeal, Henry argues that the court erred in maintaining the child's surname, that the court erred by requiring Henry, but not Virlene, to undergo a psychological evaluation, and that the court allowed insufficient time for trial. Henry does not appeal the parenting plan.

¶6    We review a district court's "best interest of the child" determination for abuse of discretion, including whether it is in the child's best interest to carry the given surname, and whether psychological evaluation is necessary. *See In re Custody of J.C.O.*, 1999 MT 325, ¶ 3, 297 Mont. 327, ¶ 3, 993 P.3d 667, ¶ 3; *In re Marriage of Maxwell*, 248 Mont. 189, 193, 810 P.2d 311, 313 (1991). Likewise, the admission of evidence is within the court's discretion, and the court's decision will not be overturned absent an abuse of discretion. *Lutz v. Natl. Crane Corp.*, 267 Mont. 368, 374, 884 P.2d 455, 458 (1994).

¶7    The court did not abuse its discretion by maintaining Oliver's surname. Henry's primary argument is that the facts in this case are not similar to the facts in *J.C.O.*, in which we upheld the court's determination that the child should keep the mother's surname. However, the child's best interest is a determination unique to each case and need not directly parallel the facts of prior cases. Here, the court found that all records were made out in the given surname of Gilcher; that Oliver had carried and was known by that surname since his birth; that the mother's surname is once again Gilcher; that the father did not attend the birth, though he was invited; and, finally, that the mother has been and will continue to be the child's primary caregiver. Under these facts, the court did not abuse its discretion in applying the "best interest of the child" standard.

¶8    Additionally, the court did not abuse its discretion by not ordering Virlene to undergo a psychological evaluation. Henry does not argue that the court erred in ordering him to undergo an evaluation, only that the evidence established that Virlene should also be subject to an evaluation. The evidence of Virlene's mental health

4

problems is not as strong, however, as the evidence presented regarding Henry's mental health problems. While it is apparent that Virlene is quick to anger and can even become somewhat physical in her anger, there is no other evidence in the record to suggest deeper psychological issues. However, Henry has feigned suicide three times, twice in front of the police. The court appropriately required both parties to complete anger management and parenting classes but required Henry alone to complete further psychological evaluation. Further, the dissolution and parenting plan will "remain open" to modification depending on the evidence developed during the anger management and parenting classes, as well as the results of the psychological evaluation.

¶9 Finally, we need not consider whether the court abused its discretion by limiting the length of the trial, as Henry did not raise the issue below. Henry's counsel did not object when the court determined that the trial would run for two hours and, in fact, thanked the court for its ruling. Additionally, Henry's counsel did not object at the end of the trial, nor did Henry's counsel indicate a need to call additional witnesses or develop additional points. Instead, she merely questioned, "I presume that [the court does not] want any other witnesses at this time?" The court answered, "No, I don't." Henry's counsel did not object or make an offer of proof as to what additional testimony she would have offered. We will not allow Henry to raise this issue for the first time on appeal because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it never had the opportunity to consider. *State v. Johnson,* 2005 MT 318, ¶ 13, 329 Mont. 497, ¶ 13, 125 P.3d 1096, ¶ 13.

¶10    It is appropriate to decide this case pursuant to our Order of February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions.  It is manifest on the face of the briefs and the record before us that the appeal is without merit because there was no abuse of discretion by the District Court.

¶11    We affirm the judgment of the District Court.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS