No. 02-062

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 3

FRANCIS YURCZYK and ANITA YURCZYK,

  Plaintiffs, Respondents and Cross-Appellants,

  v.

YELLOWSTONE COUNTY; THE BOARD OF COUNTY
COMMISSIONERS; and THE PLANNING AND ZONING COMMISSION
OF YELLOWSTONE COUNTY PLANNING AND ZONING
DISTRICT NO. 17, in such capacity and as the Board of Adjustment for
said Planning and Zoning District; all by and through JAMES A. ZIEGLER,
SR., as a Yellowstone County Commissioner and member of the Planning and
Zoning Commission; BILL KENNEDY, as a Yellowstone County Commis-
sioner and member of the Planning and Zoning Commission; JAMES RENO,
as a Yellowstone County Commissioner and member of the Planning and
 Zoning Commission; JEFF REINEKING, as a member of the Planning and
Zoning Commission; MAX R. LENNINGTON, as a member of the Planning
and Zoning Commission,

  Defendants and Appellants.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
  In and For the County of Yellowstone, Cause No. DV 2000-0784,
  Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

  For Appellants:

  Mark A. English, Deputy County Attorney, Billings, Montana

  For Respondents:

  Michael S. Dockery and Kristin L. Omvig, Crowley, Haughey, Hanson,
  Toole & Dietrich P.L.L.P., Billings, Montana

  Submitted on Briefs:  August 8, 2002
  Decided:  January 14, 2004

Filed:

  _____
  Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Yellowstone County, the Board of County Commissioners of Yellowstone County, et al. (collectively, the County), appeal from a grant of summary judgment in the Thirteenth Judicial District Court, Yellowstone County, and Francis and Anita Yurczyk (the Yurczyks) cross-appeal. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Whether the District Court erred in determining that the Yellowstone County Board of Commissioners substantially complied with § 76-2-104 and § 76-2-107, MCA.

¶4 2. Whether the Yurczyks' substantive due process and equal protection rights were violated and the "on-site construction" regulation was void for vagueness.

¶5 3. Whether the District Court erred in granting damages for the stitch crew to set the modular home and for the time delays in the Yurczyks' ability to sell the property.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6 In March of 1994, the Board of County Commissioners of Yellowstone County (the Board) adopted a resolution that created Zoning District # 17 (District 17) and a Planning and Zoning Commission (the Zoning Commission) for District 17 which included the three Board members, James Zeigler (Zeigler), Michael Matthew (Matthew), and William Kennedy (Kennedy); the Yellowstone County Surveyor, James Logan (Logan); and the Yellowstone County Assessor, Max Lennington (Lennington). The following month, a public hearing was held regarding the proposed regulations for District 17 and, at a second public hearing in May, Zeigler, Matthew, Kennedy, and Logan voted to adopt the "Zoning

2

Regulations - Zoning District Number 17" (the Regulations). The Regulations were then executed by all the members of the Zoning Commission.

¶7 The Regulations included a provision pertaining to dwelling units. The units could be single family units only; the gross floor area could be no less than 1,500 square feet; only "on-site construction with new materials . . . to be completed within one year from date of beginning;" the units had to be "built according to CABO [Counsel of American Building Officials] One & Two Family Dwelling Code currently in use by the State of Montana;" and the unit's foundation had to be "permanent and continuous . . . to frost level with or without a full basement." District 17 Zoning Regulations Article 4(C)(4).

¶8 In 1998, a resident of District 17, Arthur Weiss (Weiss), requested a zoning clarification from the Yellowstone County Planning Department regarding whether or not modular and mobile homes were allowed in District 17. Kerwin Jensen, senior planner, advised Weiss that modular and manufactured homes were not allowed because they were not consistent with on-site construction.

¶9 In December of 1999, the Yurczyks, residents of Thompson Falls, purchased two 40-acre tracts of land in District 17 for investment purposes and with the intent of building a single-family dwelling on one of the tracts and selling the tract and home to their daughter and son-in-law by June of 2000. The Yurczyks bought a Stratford modular home from Bennett Homes and Realty (Bennett Realty) and moved it onto the property in May of 2000. That same day the City of Billings/Yellowstone County Planning Department received a complaint regarding the modular home.

¶10    Nicole Cromwell (Cromwell), a planner with the City of Billings/Yellowstone County Planning Department, was assigned to investigate the complaint. After making two visits to the site, speaking with the people placing the home, and determining that the home conformed to the Uniform Building Code and CABO standards, Cromwell sent a letter to Casey Smith, the Yurczyks' son-in-law, advising him that the modular home violated the on-site construction provision of the Regulations and would have to be removed by May 31, 2000. Cromwell also advised Smith that the decision could be appealed to the Yellowstone County Board of Adjustment.

¶11    On May 22, 2000, the Yurczyks sent a letter to the Yellowstone County Board of Adjustment requesting a hearing. Cromwell forwarded the letter to the Board of Adjustment for District 17. The Board of Adjustment for District 17 held a hearing on July 11 and affirmed the Planning Department's decision.

¶12    Thereafter, the Yurczyks commenced litigation against the County alleging that the Regulations were unenforceable because they were adopted in violation of statutory requirements and that the Board and the Zoning Commission illegally, arbitrarily, and capriciously adopted and enforced the zoning regulations in violation of their substantive due process rights, equal protection rights, and their right to use, enjoy, and develop their property. Both parties filed motions for summary judgment. The court held a hearing on the cross motions and a hearing to determine damages, and attorney's fees and costs.

¶13    The court found that the Yurczyks' procedural due process rights were not violated because the Board had substantially complied with statutory procedural requirements; that

4

the Yurczyks' substantive due process rights were violated because the "on-site construction" requirement did "not have a substantial bearing upon the public health, safety, morals, or general welfare of the community" and "was not based upon a legitimate governmental objective;" that the Yurczyks' equal protection rights were violated because the on-site provision treated the Yurczyks differently than similarly situated property owners and it did not have a substantial bearing upon the preservation of property values in District 17; that the on-site regulation was unenforceable because it was void for vagueness; and that the Yurczyks were entitled to $4,450.93 in damages, $1,051 in costs, and $29,250 in attorney's fees. The County appeals the District Court's holding as to substantive due process, equal protection, and void for vagueness, and the award for damages. The Yurczkys cross-appeal, asserting that the court erred in holding that the Board substantially complied with statutory procedural requirements.

## STANDARD OF REVIEW

¶14 Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## DISCUSSION

### ISSUE ONE

5

¶15 *Whether the District Court erred in determining that the Yellowstone County Board of Commissioners substantially complied with § 76-2-104 and § 76-2-107, MCA.*

¶16 The Yurczyks argue that the Regulations are void because the Board failed to comply with § 76-2-104 and § 76-2-107, MCA, in enacting the Regulations. The County contends that the Board need only substantially comply with the statutes and that the Board did substantially comply.

¶17 First, the Yurczyks contend that the Board failed to create a development pattern and that the District Court erroneously found that the Regulations included a development pattern. Under § 76-2-101, MCA (1993), the Board is "authorized to create a planning and zoning district and appoint a zoning commission," *Ash Grove Cement Co. v. Jefferson County* (1997), 283 Mont. 486, 493, 943 P.2d 85, 89, and the Zoning Commission "is empowered and it *shall be its duty to make and adopt a development pattern*," § 76-2-104(1), MCA (1993) (emphasis added). The Yurczyks are mistaken in their argument that it is the Board's duty to adopt a development pattern. The statute clearly charges the Zoning Commission with making and adopting a development pattern, not the Board. In addition, the Yurczyks also incorrectly argue that there is no development pattern.

¶18 Section 76-2-104(1), MCA (1993), states that a development pattern's purpose is to further the "health, safety, and general welfare of the people of the county."

> [The] development pattern, with accompanying maps, plats, charts, and descriptive matter, shall show the planning and zoning commission's recommendations for the development of the districts, within some of which it shall be lawful and within others of which it shall be unlawful to erect, construct, alter, or maintain certain buildings or to carry on certain trades, industries, or callings or within which the height and bulk of future buildings

6

and the area of the yards, courts, and other open spaces and the future uses of the land or buildings shall be limited and future building setback lines shall be established.

Section 76-2-104(2), MCA (1993). The language in this statute, which prescribes the creation of the development pattern, is substantially similar to the language used in District 17's regulations. The first page of the Regulations reads:

The regulations and development pattern adopted herein are for the purpose of protecting and furthering the health, safety, and general welfare of the people living in the District and in Yellowstone County, Montana.

The development pattern, with the accompanying maps, plats, charts and descriptive matter, shall show the planning and zoning commission's recommendations for the development of the district within some of which it shall be lawful and within others of which it shall be unlawful to erect, construct, alter or maintain certain buildings, or to carry on certain trades, industries or callings, and the future uses of the land or buildings shall be limited.

The language and the thoroughness of the Regulations evidences a plan by the Commission to create not only regulations, but also a development pattern.

¶19    An issue then arises as to whether it was appropriate for a development pattern and regulations to be promulgated together. Reading Part 1, County Planning and Zoning Commission, §§ 76-2-101 through 112, MCA (1993), from beginning to end, indicates that a development pattern is made and adopted, § 76-2-104, MCA (1993), and then regulations are promulgated, § 76-2-107, MCA (1993). Here, a development pattern and regulations were created simultaneously. However, neither the statutes themselves, nor any case law, preclude the creation of a development pattern and regulations simultaneously. The District Court did not err in finding a development pattern within the Regulations.

7

¶20    Second, the Yurczyks argue that the Zoning Commission did not submit a draft resolution of the Regulations to the Board. Section 76-2-107, MCA, reads:

> **Preparation of resolutions and other materials**. The planning and zoning commission may, for the benefit and welfare of the county, prepare and submit to the board of county commissioners drafts of resolutions for the purpose of carrying out the development districts or any part thereof previously adopted by the commission, including zoning and land use regulations, . . . [t]he board of county commissioners is hereby authorized to adopt such resolutions.

According to a public notice issued by the Zoning Commission after District 17 was created, the "[z]oning regulations proposed for adoption by the [Zoning] Commission . . . [were placed] on file in the office of the Yellowstone County Clerk and Recorder." The Zoning Coordinator, Kerwin Jensen (Jensen), for the Zoning Commission Board of Adjustment, sent a letter to the three county commissioners, Zeigler, Matthew, and Kennedy; the County Assessor, Lennington; and the County Surveyor, Logan, requesting and recommending adoption of the Regulations. The Regulations were attached to the letter and Jensen advised them that there would be a public hearing concerning the Regulations.

¶21    Zeigler, Matthew, Kennedy, and Lennington attended the public hearing. A lengthy discussion occurred and the hearing was adjourned and continued at a later date to give the public additional time to review the Regulations. After the first meeting, Jensen sent a letter to Zeigler, Matthew, Kennedy, Lennington, and Logan advising them of the public hearing and informing them that changes to the original draft regulations had been executed and mailed to all property owners within District 17. In addition, a copy of the proposed regulations, with changes to the text, was attached to the letter. The second public hearing

8

was held immediately following a Board meeting and Zeigler, Matthew, Kennedy, and Logan were in attendance. At the close of the second public hearing, Matthew moved to adopt the Regulations, Logan seconded, and the adoption was unanimous. Thereafter, the aforementioned individuals, and Lennington, executed the regulations.

¶22 While § 76-2-107, MCA, does call for the Zoning Commission to submit a "resolution" to the Board, the regulations were made available to the Board after District 17 was adopted, and they were also directly submitted to the Board after the first public hearing. Although it appears the regulations were not submitted under the title of a "resolution," the regulations were submitted to the Board for its consideration. To void the regulations for this simple "title" oversight would be to elevate form over substance and we will not do that. Section 1-3-219, MCA.

¶23 The next issue then raised is the Yurczyks' contention that the Board itself did not vote and adopt the Regulations. "The proper issue facing a district court interpreting [§§ 76-2-101 through 112, MCA] is whether or not a board of county commissioners substantially complied with the procedural steps for creating zoning districts." *Petty v. Flathead Cty. Bd. of Cty. Com'rs* (1988), 231 Mont. 428, 431, 754 P.2d 496, 498-99. The Yurczyks assert that the Regulations were adopted during a Zoning Commission meeting. The record does not establish that. The minutes from the two public hearings are contained in the same record as the regular Board meeting minutes. Both gatherings were referenced in the record as public hearings, not Zoning Commission meetings.

9

¶24    The problem the balance of the Yurczyks' argument raises is that Zeigler, Matthew and Kennedy did not make clear in what capacity they were voting, either as Zoning Commission members, or as Board members. This problem is, unfortunately, inherent in the statute's construction. All three Board members sit on the Zoning Commission. Section 76-2-102(1), MCA (1993). Theoretically, when a board votes, the members would need to state that they are voting in their capacity as board members, and not as planning and zoning commission members. While the statute does authorize a board to adopt the regulations, § 76-2-107, MCA (1993), and here it is unclear whether the Board or the Zoning Commission voted to adopt and only the Zoning Commission executed the regulations, the Board members are on the Zoning Commission and it is difficult to imagine that they would have voted to adopt and executed as the Zoning Commission but would not do the same in their capacity as board members.

¶25    We are not advocating for other county boards or planning and zoning commissions to follow Yellowstone County's course of conduct; in fact, we would assert that in the future members should make clear in what capacity they are voting and sign as Board members rather than as planning and zoning commission members. However, to void these statutes in this instance would, as noted earlier, elevate form over substance. Section 1-3-219, MCA. The Yurczyks assert that this holding would set precedent allowing for future board decisions to be made without all members present. We make clear that our holding does not give license to a planning and zoning commission or board of county commissioners to adopt regulations or other measures in whatever manner they feel appropriate. We simply hold that

10

the regulations at issue here, as adopted, substantially complied with § 76-2-104 and § 76-2-107, MCA (1993).

## ISSUE TWO

¶26    *Whether the Yurczyks' substantive due process and equal protection rights were violated and the "on-site construction" regulation was void for vagueness.*

## A. SUBSTANTIVE DUE PROCESS

¶27    The County argues that the District Court erred in finding that the Yurczyks' right to substantive due process was violated because the on-site construction provision does have a bearing on the welfare of the community.  The County maintains that the regulation helps to preserve property values.  The Yurczyks contend that the zoning ordinance does not protect property values, it interferes with their constitutional right to use, enjoy, and develop their property.

¶28    Under § 76-2-301, MCA, "[l]ocal municipal governments in Montana are empowered to enact zoning ordinances restricting the use of property in their jurisdictional area." *Boland v. City of Great Falls* (1996), 275 Mont. 128, 132, 910 P.2d 890, 892-93.  We have held that a zoning ordinance enacted pursuant to the aforementioned section "will be found to be a constitutional exercise of police power if it has a substantial bearing upon the public health, safety, morals or general welfare of the community."  *Boland*, 275 Mont. at 132, 910 P.2d at 893.

¶29    Citing several cases, *FCC v. Beach Communications* (1993), 508 U.S. 307, 113 S.Ct. 2096,124 L.Ed.2d 211; *Aleman v. Glickman* (9th Cir. 2000), 217 F.3d 1191; *Joseph E.*

11

*Seagram & Sons, Inc. v. Hostetter* (1966), 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336, the County argues that we should not ask whether the regulation actually preserved property values but whether the Board members, at the time the ordinance was passed, could have reasonably believed that the regulation would protect property values. As the Yurczyks noted, "[t]hose cases involve review of state and federal legislative enactments and corresponding statutory classifications - not local zoning ordinances."

¶30 We hold that the zoning regulation at issue here does not have a substantial bearing on the public health, safety, morals, or general welfare of the community as the County asserts. Jeff Bollman (Bollman), a senior planner for the City of Billings/Yellowstone County, who helped draft and create the Unified Zoning Regulations, which combined the City and County zoning regulations, and County Commissioner, Matthew, were both unable to identify any health and only minimal safety concerns that the on-site construction provision addressed. As to general welfare, Matthew testified that he believed the provision advanced the residents' ability to control their environment and Bollman was also unable to determine what kind of general welfare interests the provision protected other than a possible preservation of property values.

¶31 While a resident's ability to control his environment and the preservation of property values may implicate legitimate government concerns in some zoning situations, there is nothing in the record here that demonstrates these concerns actually drove the formulation of the regulations at issue. Indeed, the record reflects that the modular home would not have affected property values in the area. Lennington testified that homes built off-site "would

12

have no real bearing upon market values at all . . . in this particular setting, [District 17,] because [it] is a rural setting, and it's spread out into large residential acreages." Thus, the "on-site construction" provision does not have a substantial bearing upon the public health, safety, morals, or general welfare of the community. Accordingly, we hold that the District Court did not err in concluding that the Yurczyks' substantive due process rights were violated because the "on-site construction" requirement was not rationally related to a legitimate governmental interest.

## B. EQUAL PROTECTION

¶32     In assuming that the Yurczyks' equal protection rights were not violated, the County again argues that the regulation had a rational relationship to the welfare of the community. Because we have already addressed and disposed of that issue, we will not revisit it.   Even assuming that Yurczyks were not treated differently than similarly situated groups, the zoning ordinance did not have "a substantial bearing upon the public health, safety, morals or general welfare of the community."   *Boland*, 275 Mont. at 132, 910 P.2d at 893. Accordingly, we hold that the District Court did not err in concluding that the regulation violated the Yurczyks' equal protection rights.

## C. VOID FOR VAGUENESS

¶33     The County contends that the on-site construction provision is not void because it specifically required a structure to be built on-site and by definition, a modular home is not built on-site.  The County further contends that "[a] person of ordinary intelligence should have been able to comprehend" that the regulation prohibited the placement of a modular

13

home in the District. The Yurczyks argue that the on-site construction regulation is void for vagueness because "on-site construction" is not defined in the regulation; there is no indication of what percentage of the structure must be built on-site; and the Board and the Zoning Commission responsible for enforcing the regulations were unable to determine if the modular home met the on-site construction provision.

¶34 A statute is void for vagueness on its face if it fails to give a person of ordinary intelligence fair notice that the statute does not permit his contemplated conduct. *State v. Martel* (1995), 273 Mont. 143, 150, 902 P.2d 14, 18. Here, even the County officials could not agree as to what "on-site construction" meant. When Matthew was asked what on-site construction meant under the Regulations for District 17, he did not know. When asked what on-site construction meant to him personally he said, "a house where lumber is delivered to site and [the house is] built on-site." He also felt that log homes, built off site, brought on site, and then reassembled, qualified as on-site construction. Bollman, however, disagreed with Matthew and clarified in a written report that log homes did not qualify as on-site construction. The county surveyor, Jeff Reinking, a successor to Logan, testified in his deposition that on-site construction had to do with the amount of labor that would be performed on-site. He said that 60 to 70 percent of the labor needed to be performed on-site, while Lennington, the former county assessor, indicated that 90 to 95 percent qualified as on-site construction. Lennington even stated that the term on-site construction was "ambiguous and nebulous."

14

¶35   It is difficult to imagine how the general public could be any more informed as to what on-site construction means when the very officials who adopted the regulation and who are to enforce it could not agree on its meaning. Accordingly, we hold that the District Court did not err when it concluded that the regulation was void for vagueness.

## ISSUE THREE

¶36   *Whether the District Court erred in granting damages for the stitch crew to set the modular home and for the time delays in the Yurczyks' ability to sell the property.*

¶37   The County argues that the District Court erred in awarding damages for lost payments on, or the time value of money on, the delayed receipt of payments from the Smiths to the Yurczyks for the forty-acre tract and modular home because there was no contract between the parties and the Yurczyks did not mitigate their damages. The Yurczyks maintain that because they had purchased the property solely as an investment with the purpose of reselling, they were entitled to lost interest which they would have received had the property and modular home been sold to the Smiths in June of 2000. In addition, the Yurczyks maintain that they are entitled to reimbursement for the out-of-area stitch crew[1] because, in order to assure guaranty of the home, the dealer that sold the home must "set" the home.

¶38   In ascertaining whether the Yurczyks were appropriately awarded damages, we must determine whether the District Court abused its discretion. *Graveley Simmental Ranch Co. v. Quigley*, 2003 MT 34, ¶ 21, 314 Mont. 226, ¶ 21, 65 P.3d 225, ¶ 21 (citing *Sletteland v.*

---

[1]   A stitch crew is a crew that comes in and finishes the modular home after it is brought in on pods.

*Roberts*, 2000 MT 382, ¶ 36, 304 Mont. 21, ¶ 36, 16 P.3d 1062, ¶ 36). As the record indicates, the Yurczyks bought the property for investment purposes and intended to sell one of the tracts to the Smiths by June of 2000. The District Court did not find that there was a contract between the Yurczyks and Smiths but properly concluded that because the Yurczyks intended to sell the property, they were entitled to the lost interest which they would have received had a sale occurred in June of 2000.

¶39 In addition, the Yurczyks did not fail to mitigate damages in using a construction crew from outside the area to set the modular home. The Yurczyks' Stratford modular home was purchased from Bennett Realty in Thompson Falls. Bennett Realty is obligated to guarantee the modular home for ten years. Lyle George, a Stratford Homes dealer, testified that because the dealers are obligated to guarantee the homes, the dealers do not trust crews, aside from their own, to set the homes. It is understandable that the Yurczyks would want to use Bennett Realty's stitch crew to insure guarantee of their home. Accordingly, we hold that the District Court did not abuse its discretion in awarding damages to the Yurczyks.

¶40 The trial court's decision is affirmed.

/S/ JAMES C. NELSON

We concur:

/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

16

Justice W. William Leaphart specially concurring.

¶41    I concur with issues one and three.  As to issue two, since I agree that the regulation is void for vagueness, I concur in the result; however, I would not reach the due process and equal protection issues.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray joins in the concurring opinion of Justice Leaphart.

/S/ KARLA M. GRAY