No. 04-216

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 112

STATE OF MONTANA,

            Plaintiff and Respondent,

      v.

GEORGE WILLIAM PARRISH,

            Defendant and Appellant.


APPEAL FROM:      District Court of the Eleventh Judicial District,
                  In and for the County of Flathead, Cause No. DC-01-355(A),
                  The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

            For Appellant:

            Daniel R. Wilson, Measure & Wilson, P.C., Kalispell, Montana

            For Respondent:

            Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
            Assistant Attorney General, Helena, Montana

            Ed Corrigan, County Attorney; Daniel M. Guzynski, Deputy County
            Attorney, Kalispell, Montana


                              Submitted on Briefs:  April 5, 2005

                              Decided:  May 4, 2005

Filed:


      _____
                              Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     George William Parrish (Parrish) appeals from the denial of his motion for a new trial by the Eleventh Judicial District Court, Flathead County. We affirm except for the limited issue of whether the District Court improperly ordered Parrish to pay expert witness fees and expenses beyond the $10 per diem set out in § 25-10-501, MCA. The State concedes this point and we therefore remand solely for reassessing witness costs.

¶2     We must determine whether the District Court erred by denying Parrish's motion for a new trial based upon the State's alleged exercise of peremptory challenges during jury selection in a manner that intentionally excluded men from the jury in violation of Parrish's right to equal protection under the United States and Montana Constitutions.

## BACKGROUND

¶3     A jury convicted Parrish of two felony counts of sexual assault and two felony counts of sexual intercourse without consent involving his two step-daughters. At Parrish's trial, as with any jury trial, the District Court and counsel for the parties selected a jury from the venire through the *voir dire* process. The District Court dismissed potential jurors for cause, and the State and Parrish's counsel exercised their six peremptory challenges to excuse others, until the District Court eventually seated a jury panel of twelve and one alternate juror.

¶4     The District Court first dismissed three men and three women for cause, after which the jury venire consisted of thirteen men and eleven women. The State exercised six peremptory challenges by dismissing six men from the jury venire. Parrish's counsel

2

exercised his six peremptory challenges by removing three men and three women from the jury venire. As a result, the final jury panel consisted of eight women and four men. The parties chose a man as the alternate juror after the State used its peremptory challenge to dismiss one of two men and Parrish's counsel used his peremptory challenge to excuse the lone woman.

¶5 Parrish's counsel approached the bench after the parties had completed *voir dire* and after the court had seated the final jury panel of twelve. Parrish's counsel apparently interposed an off-the-record objection concerning the State's use of all six peremptory challenges to exclude only men. Parrish's counsel made no formal motion and evidently did not attempt to place any objection on the record at that time. The District Court then impaneled the final twelve jurors, gave them preliminary instructions, and dismissed them for the lunch hour. The District Court also dismissed the remaining jury venire. The District Court, while the jury was in recess, reported that Parrish's counsel had indicated at the earlier sidebar that he had a motion to make, but that it was "agreed that we would go ahead and finish the selection process, excuse the panel for the noon hour, and that the motion could then be presented."

¶6 Parrish's counsel responded that he would get his "motion on the record, and then, depending on the verdict," he would brief and submit a motion for a new trial. Parrish's counsel then made his formal objection, pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The District Court asked the State to respond. The State justified each of its strikes and replied that it would respond in more detail if Parrish's

3

counsel filed a motion. The trial continued.

¶7 At the end of the first day of the trial, the State asked the District Court whether it intended to make a formal ruling on Parrish's counsel's *Batson* objection. The District Court remarked that Parrish's counsel expressed his intent that the *Batson* objection be preserved for a possible motion for a new trial after a potential conviction and the State already had explained each of its peremptory challenges, therefore, the parties need not "do anything about it."

¶8 The jury found Parrish guilty on all counts. Parrish filed a motion for a new trial, contending in part, that the State's use of all of its peremptory challenges to exclude men from the jury panel violated *Batson* and its progeny. The District Court held a hearing where no witnesses testified and determined that the State had not engaged in purposeful gender discrimination by using its six peremptory challenges to strike only men from the jury venire. Parrish appeals.

## STANDARD OF REVIEW

¶9 We review *de novo* a district court's application of the law regarding the timeliness of a *Batson*-type challenge. *State v. Ford*, 2001 MT 230, ¶ 7, 306 Mont. 517, ¶ 7, 39 P.3d 108, ¶ 7 (citations omitted).

## DISCUSSION

¶10 Parrish, relying on *Batson* and its progeny, argues that the State violated his right to equal protection under the United States and Montana Constitutions by exercising its peremptory challenges in a discriminatory manner by excluding only men from the jury.

4

*Batson* held that a prosecutor could not exercise peremptory challenges to exclude potential jurors based solely upon race. *Batson*, 476 U.S. at 84, 106 S.Ct. at 1716, 90 L.Ed.2d at 79. The United States Supreme Court extended *Batson* to prohibit gender discrimination during jury selection. *J.E.B. v. Alabama ex rel T.B.* (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89. We reviewed the history and progression of the *Batson* analysis concerning jury composition in *Ford*, ¶¶ 8-20, where we adopted the *Batson* standard with respect to gender.

¶11　A trial court must follow a three-prong procedure when determining whether a *Batson* violation has occurred. Counsel first must establish a *prima facie* case of purposeful discrimination. The burden then shifts to the responding counsel to articulate a gender-neutral explanation for exercising the peremptory challenge. The court finally must determine, through findings of fact, whether counsel has established a *prima facie* case of purposeful discrimination. *Ford*, ¶ 16.

¶12　First and foremost, however, we require that counsel must raise a *Batson* challenge before the district court swears the jury and dismisses the venire. *Ford*, ¶ 28. In *Ford*, we deemed a *Batson* challenge raised after the court had impaneled and sworn the jury and had dismissed the venire to be untimely and therefore waived. *See also Casiano v. Greenway Enterprises Inc.*, 2002 MT 93, ¶ 27, 309 Mont. 358, ¶ 27, 47 P.3d 432, ¶ 27 (holding that moving to discharge the jury based upon *Batson* after the jury had been selected, sworn, and the venire excused is untimely).

¶13　An untimely *Batson* challenge results in a waiver for several reasons. *Ford*, ¶ 21 (citation omitted). First, it delays justice because once the court dismisses the venire, the

5

jury selection process must start anew with no readily available venire from which to finish the selection process. *Ford*, ¶ 25. Moreover, once the court dismisses the venire, the challenged counsel's duty to explain his or her peremptory challenges "becomes very difficult once the persons to whom the peremptories were directed have disappeared from sight[.]" *Ford*, ¶ 26 (citations omitted). Finally, a substantive *Batson* challenge raised after the court has sworn the jury and dismissed the remaining venire deprives the court of its opportunity to first correct any error and cure the alleged defect. *Ford*, ¶ 27 (citations omitted).

¶14 We determine that a similarly untimely objection has occurred here, and therefore, do not reach the merits of Parrish's claim that the State's use of peremptory challenges violated Parrish's equal protection rights. Parrish's counsel apparently first attempted to raise a *Batson*-type objection at an off-the-record sidebar that occurred after the parties had completed *voir dire* and the court had seated the final jury panel of twelve. Parrish's counsel did not argue, much less establish, a *prima facie* case of purposeful discrimination at that time, and therefore, failed to make an objection sufficient to constitute a *Batson* objection. *Ford*, ¶ 16.

¶15 The record in this case admittedly proves problematic. The District Court confirmed that Parrish's counsel apparently had attempted to raise a *Batson*-type claim during the off-the-record sidebar at which point the District Court and Parrish's counsel appeared to reach some agreement regarding the procedure to be followed. It remains the duty of the party seeking to raise a *Batson*-type claim, however, to come forward in a timely manner and

6

follow the clear dictates of our discussion in *Ford*. It falls beyond the province of the district court or trial counsel to jettison these requirements in search of a more expedient process precisely for the reasons discussed in ¶ 13 above.

¶16     Parrish's counsel's second attempt to raise a *Batson*-type objection occurred after the District Court had dismissed the remaining venire, which of course, falls too late. *Ford*, ¶ 28; *Casiano*,¶ 28. The District Court, in fact, offered Parrish's counsel an opportunity at that time to present his *Batson* motion. Parrish's counsel instead chose merely to preserve his objection for the record and wait until the jury had rendered its verdict before presenting a formal *Batson* claim.

¶17     Parrish's counsel's third opportunity to raise a *Batson*-type objection presented itself at the end of the first day of trial when the *State* inquired whether the District Court intended to make a formal ruling on Parrish's *Batson* objection. Parrish's counsel, instead of providing a *Batson* argument and requesting a formal *Batson* hearing and ruling, acquiesced to the trial continuing. Indeed, the *Batson* hearing actually did not occur until Parrish made a motion for a new trial after the jury had convicted him. This scenario falls well short of the timeliness that we demand pursuant to *Ford*, a case decided two years before Parrish's trial.

¶18     In *Casiano*, neither counsel for the parties nor the court had the benefit of our *Ford* decision at the time of that trial. Nevertheless, we concluded that our decision in *Ford* regarding the timeliness of the *Batson* objection controlled. *Casiano*, ¶ 28. Here Parrish had notice of our *Ford* requirement of making a timely *Batson* objection for nearly two years

7

before his trial began in September, 2003.  We cannot justify any grounds that would allow an untimely *Batson*-type objection in this matter.

¶19     We finally note that in *Batson* challenges "it is imperative that the trial court fully develop a record for review – a record that includes all relevant facts and information relied upon by the trial court to render its decision, as well as a full explanation of the court's rationale."  *Ford*, ¶ 18 (citation omitted).  This factual record and explanation proves necessary to our review of the merits of any *Batson*-type challenge.  Although the District Court in the instant case held a hearing on Parrish's counsel's *Batson* challenge, it did not make findings of fact and its only rationale appears in the transcripts of the hearing  where it explained that it deemed the State's explanations to be credible.  This omission is not fatal to our decision, however, because as stated in ¶ 14 above, we conclude that Parrish made an untimely *Batson* objection and we therefore do not reach the merits of his *Batson* challenge.

¶20     The District Court's denial of Parrish's motion for a new trial will stand in light of the fact that we will affirm a district court if it reaches the right result for the wrong reason. *State v. Veis*, 1998 MT 162, ¶ 16, 289 Mont. 450, ¶ 16, 962 P.2d 1153, ¶ 16.  We conclude that the District Court did not err when it denied Parrish's motion for a new trial based upon the State's exercise of peremptory challenges during jury selection because Parrish failed to raise a timely *Batson*-type objection.

¶21     Remanded for the limited purpose of reassessing witness costs and affirmed on the denial of Parrish's motion for a new trial.

/S/ BRIAN MORRIS

8

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE