No. 04-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 150

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ROBERT L. ALLUM,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DC 2002-216,
                  Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Robert Kolesar, Public Defender, Bozeman, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
        Assistant Attorney General, Helena, Montana

        Susan L. Wordal, City Attorney's Office, Bozeman, Montana

Submitted on Briefs:  March 30, 2005

Decided:   June 14, 2005

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Robert Allum appeals from the District Court's denial of his appeal challenging the judgment and sentence of the Municipal Court. We affirm.

¶2     We address the following issues on appeal:

¶3     1. Whether the Municipal Court violated Allum's right to trial by jury through its method of jury selection.

¶4     2. Whether the Municipal Court's jury instructions regarding the elements of criminal trespass correctly stated the law.

¶5     3. Whether the Municipal Court should have given the jury an entrapment instruction.

¶6     4. Whether the store manager had authority to ask Allum to leave the premises.

¶7     5. Whether the criminal trespass statute is vague and overbroad.

¶8     6. Whether other procedural irregularities prejudiced Allum's trial.

¶9     7. Whether the District Court abused its discretion in granting extra time for the prosecution to file its appellate brief.

¶10     8. Whether the Municipal Court properly ordered Allum to pay costs.

## FACTUAL AND PROCEDURAL BACKGROUND

¶11     The Smith's Food and Drug grocery store (Smith's) in Bozeman houses a branch of Wells Fargo bank. Allum entered this branch on January 29, 2002. Allum wanted to cash a $2,000 check that was drawn on Wells Fargo. Because Allum did not hold an account at Wells Fargo, a teller told him that, per company policy, he would have to stamp his thumbprint on the check if he wished to cash it. Allum was outraged by this policy and

demanded to see the branch manager. The manager repeatedly told him that she would not allow him to cash the check without giving a thumbprint. When he continued to object the manager asked him to leave the bank. Allum then moved just outside of Wells Fargo's leased area within Smith's and continued his argument with bank personnel.

¶12 At this point two police officers had arrived, and one of them went to tell the manager of Smith's about the situation. Allum asked one of the officers to issue a police report because, as he explained, he wanted to use the report in a future federal lawsuit. The officer stated that because the bank had not violated any laws he would not issue a report. The Smith's manager came to the scene of Allum's commotion and asked Allum to leave the store. After Allum repeatedly refused to leave, the officers arrested him and charged him with criminal trespass. They briefly detained him in a police car in the Smith's parking lot before he was released.

¶13 The Bozeman Municipal Court held a jury trial on July 9, 2002. Allum was convicted and sentenced to six months suspended and a $500 fine. The court also imposed witness and jury costs on Allum of $952.95 and $364.88. Allum appealed his conviction to the District Court where his conviction was affirmed. He now appeals to this Court.

## STANDARD OF REVIEW

¶14 We review the giving of jury instructions for "whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law." *State v. Cameron*, 2005 MT 32, ¶ 13, 326 Mont. 51, ¶ 13, 106 P.3d 1189, ¶ 13 (citing *State v. Bowman*, 2004 MT 119, ¶ 49, 321 Mont. 176, ¶ 49, 89 P.3d 986, ¶ 49). The interpretation of a statute is a question of law

3

that we review to determine whether the interpretation is correct. *State v. McNally*, 2002 MT 160, ¶ 5, 310 Mont. 396, ¶ 5, 50 P.3d 1080, ¶ 5 (citing *State v. Peplow*, 2001 MT 253, ¶ 17, 307 Mont. 172, ¶ 17, 36 P.3d 922, ¶ 17). Whether a statute is unconstitutional is a question of law. *State v. Mathis*, 2003 MT 112, ¶ 8, 315 Mont. 378, ¶ 8, 68 P.3d 756, ¶ 8.

## DISCUSSION

## ISSUE ONE

¶15 *Whether the Municipal Court violated Allum's right to trial by jury through its method of jury selection.*

¶16 Allum contends that the Municipal Court violated his right to trial by jury through its method of selecting jurors. We do not reach this issue because Allum did not object to the seating of the venire at the time it was sworn. *State v. Parrish*, 2005 MT 112, ¶ 12, 327 Mont. 88, ¶ 12, 111 P.3d 671, ¶ 12. Allowing Allum to object to the selection process after the impaneling of the jury (indeed, in this case, after it has been dismissed) would deprive the Municipal Court "of the ability to correct any error in the proceedings in a timely fashion." *State v. Ford*, 2001 MT 230, ¶ 27, 306 Mont. 517, ¶ 27, 39 P.3d 108, ¶ 27.

## ISSUE TWO

¶17 *Whether the Municipal Court's jury instructions regarding the elements of criminal trespass correctly stated the law.*

¶18 In its written instructions to the jury the Municipal Court stated the following:

Issues in Criminal Trespass
To convict the defendant of Criminal Trespass, the State must prove the following elements:

4

1. That the defendant entered or remained unlawfully in an occupied structure; or
2. That the defendant entered or remained unlawfully in or upon the premises of another; and
3. That the defendant acted knowingly;

Directly below these elements, the instruction contained some additional language. However, in two places the words "all of these" and "any of these" were crossed out with pen and "the necessary" was handwritten above them. Therefore, the revised version read as follows, with the stricken language in parentheses and the handwritten language emphasized:

> If you find from your consideration of the evidence that (all of these) *the necessary* elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.
> If, on the other hand, you find from your consideration of the evidence that (any of these) *the necessary* elements have not been proved beyond a reasonable doubt then you should find the defendant not guilty.

Allum asserts that by not requiring the jury to find Allum guilty beyond a reasonable doubt on all elements, the court allowed the jury to pick and choose which elements the State had to prove.

¶19 As is obvious from a reading of the elements themselves, Allum's argument is incorrect. The State does *not* have to prove elements 1 *and* 2 and 3 beyond a reasonable doubt. It has to prove 1 *or* 2, plus 3. For Allum's argument to make sense we would have to assume that the jury could have read "the necessary elements" to mean that it could convict Allum through merely finding 1 and 2 but not 3, or by merely finding a single element satisfied beyond a reasonable doubt, but not any of the others. Allum provides no reason to think the jury would have made such a tortured reading of the instructions. Instead

5

he merely cites to cases where we have held that all elements of a crime must be proved beyond a reasonable doubt. Allum is correct that we have recognized that due process "requires the State to prove beyond a reasonable doubt every element of a crime charged in a criminal prosecution." *See State v. McCaslin*, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24. However "every element" does not mean "all elements" that are included in a statute when the statute gives alternative elements that may constitute the underlying offense. Allum's challenge to the court's jury instruction is without merit.

¶20 The Dissent contends that this instruction was not a correct statement of law because "there was no specific unanimity instruction given by the court in this case." Allum does not raise this argument on appeal, and we therefore decline to address the issue. The Dissent argues that we should address the issue because it is the duty of the trial court to give a unanimity instruction even if not requested by the parties. However, again, not only did Allum not raise the issue at trial, but he does not raise it here. The cases the Dissent cites for the proposition, that the failure to request a unanimity instruction does not prejudice raising the issue on appeal, all involve just that–the raising of the issue on appeal. *See Schuff v. Jackson*, 2002 MT 215, ¶ 34, 311 Mont. 312, ¶ 34, 55 P.3d 387, ¶ 34; *State v. Weaver*, 1998 MT 167, ¶ 25, 290 Mont. 58, ¶ 25, 964 P.2d 713, ¶ 25; *Billings Leasing Co. v. Payne* (1978), 176 Mont. 217, 219, 577 P.2d 386, 388. The above cases do not suggest that an appellate court should, *sua sponte*, raise the issue.

**ISSUE THREE**

¶21 *Whether the Municipal Court should have given the jury an entrapment instruction.*

6

¶22 The Municipal Court refused to give Allum's proposed instructions regarding an entrapment defense. He argues this was reversible error. This argument has no merit. Both the manager of the bank and the manager of the store asked Allum to leave and Allum insisted on staying. Allum contends that the police officers "incited or induced" him into committing trespass by summoning store managers to the scene so that the managers could ask him to leave. *See* § 45-2-213, MCA (defining entrapment). Locating a person with authority over the property in order to peacefully resolve a dispute does not constitute action inciting or inducing a crime. The Municipal Court was within its discretion in not instructing the jury on entrapment.

**ISSUE FOUR**

¶23 *Whether the store manager had authority to ask Allum to leave the premises.*

¶24 Under the criminal trespass statute, § 45-6-201(1), MCA, the owner of a property or an "authorized person" may ask an individual to leave the property. Allum asserts that an "authorized person" must be someone with *written* authorization. Therefore, he continues, the State did not prove beyond a reasonable doubt that an authorized person asked him to leave the store because it did not prove that the manager of Smith's had written authorization. He draws this rather novel claim from § 70-15-304, MCA, which states, "A power can be executed only by a written instrument which would be sufficient to pass the estate or interest intended to pass under the power if the person executing the power were the actual owner." A "power" is separately defined as "an authority to do some act in relation to real property or to the creation or revocation of an estate therein or a charge thereon, which the

7

owner granting or reserving such power might himself perform for any purpose." Section 70-15-301, MCA. At trial, the manager of the store, who is not the owner, admitted that he did not know if his job description stated that he had authority to ask people to leave the property. Allum argues there was reasonable doubt as to whether the manager had such authority, and therefore reasonable doubt as to whether Allum committed trespass.

¶25 Allum's argument has no merit. Under this inventive reading of this State's statutes governing estates in land, any act concerning real property involving a non-owner would have to be authorized in writing. This is not what Montana's real property laws require. Section 70-15-304, MCA, is directed toward the transfer of interests in real property such as easements, leases, or executory interests, not the granting of permission or agency.

¶26 When the police arrived at the scene of Allum's commotion, they properly located employees to ascertain who was an "authorized person" to make decisions regarding the property. We hold that the store manager did not need explicit written authority from the owner in order to exercise the specific power of asking someone to leave the property.

**ISSUE FIVE**

¶27 *Whether the criminal trespass statute is vague and overbroad.*

¶28 Section 45-6-201(1), MCA, states in full:

> A person enters or remains unlawfully in or upon any vehicle, occupied structure, or premises when he is not licensed, invited, or otherwise privileged to do so. Privilege to enter or remain upon land is extended either by the explicit permission of the landowner or other authorized person or by the failure of the landowner or other authorized person to post notice denying entry onto private land. The privilege may be revoked at any time by personal communication of notice by the landowner or other authorized person to the entering person.

8

Allum claims that this statute is vague and/or overbroad. He argues that "authorized person" must be narrowly construed so as not to violate his rights to due process and free speech. If "authorized person" is not limited to mean someone who has written authority from the landowner, he continues, the term, and thus the statute, is vague and/or overbroad.

¶29 The overbreadth doctrine "is an exception to the general rule that statutes are evaluated in light of the situation and facts before the court." *State v. Lilburn* (1994), 265 Mont. 258, 264, 875 P.2d 1036, 1040 (citing *R.A.V. v. St. Paul* (1992), 505 U.S. 377, 411, 112 S.Ct. 2538, 2558, 120 L.Ed.2d 305, 336 (White, J., concurring)). "[A] statute which can be applied to constitutionally protected speech and expression may be found to be invalid in its entirety, even if it could validly apply to the situation before the court." *Lilburn*, 265 Mont. at 264, 875 P.2d at 1040 (citing *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 704 P.2d 1021). However, a statute cannot be challenged just because it might result in an unconstitutional abridgment of speech in a hypothetical case. Rather, the unconstitutional overbreadth must be "'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Lilburn*, 265 Mont. at 264-65, 875 P.2d at 1040 (quoting *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830, 842).

¶30 Allum asserts that if "authorized person" is not limited to mean a person whom the landowner has explicitly given permission in writing then, "Police, prosecutors and judges have unfettered and undefined ability to decide what person might be authorized by a landowner to rescind privilege to enter." How this might occur Allum does not say. Allum's

9

challenge is based purely on speculation and does not rise to the level of real and substantial. Therefore, Allum's overbreadth challenge fails.

¶31 Related to the overbreadth doctrine is that of vagueness. "A statute is void for vagueness on its face if it fails to give a person of ordinary intelligence fair notice that the statute does not permit his contemplated conduct." *Yurczyk v. Yellowstone County*, 2004 MT 3, ¶ 33, 319 Mont. 169, ¶ 33, 83 P.3d 266, ¶ 33 (citing *State v. Martel* (1995), 273 Mont. 143, 150, 902 P.2d 14, 18). Section 45-6-201, MCA, gives fair notice. A person of ordinary intelligence who reads the statute will have fair notice that he will have committed trespass if he refuses to leave a store when the manager of the store asks him to leave.

### ISSUE SIX

¶32 *Whether other procedural irregularities prejudiced Allum's trial.*

¶33 Allum makes additional claims that his conviction violated due process. First, citing *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, Allum argues that he was denied access to crucial evidence and witnesses for his defense. *See State v. Ellenburg*, 2000 MT 232, ¶ 52, 301 Mont. 289, ¶ 52, 8 P.3d 801, ¶ 52 (discussing *Brady* violations). Under *Brady,* a defendant must demonstrate that "(1) the State possessed evidence, including impeachment evidence, favorable to the defense; (2) the petitioner did not possess the evidence nor could he have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different."

*Ellenburg*, ¶ 52 (quoting *Gollehon v. State*, 1999 MT 210, ¶ 15, 296 Mont. 6, ¶ 15, 986 P.2d 395, ¶ 15).

¶34 On February 6, 2002, eight days after his arrest, Allum filed a discovery request asking the Municipal Court to order the State to obtain the security camera video from the day of his arrest. On February 7, 2002, the court issued an order which, among other things, ordered the State to obtain the video. Allum filed the request after discussing the matter at length with the city prosecutor, who advised Allum that the State did not possess a copy of the video, and that the quickest way for Allum to obtain a copy would be to request an Investigative Subpoena from the District Court. A few days after the State received the order, around February 13, 2002, the city prosecutor had a conversation with the manager of the bank and learned for the first time that the video in the bank is recorded digitally and that the data is destroyed five to fourteen days after it is recorded. The manager made inquiries and discovered that the data, indeed, had been destroyed. In addition, the city prosecutor learned that even if the State had inquired the day it received the discovery order (no earlier than February 8, 2002), the data would already have been lost.

¶35 These facts demonstrate that the State did not commit a *Brady* violation because the State did not "suppress" the evidence. Neither the State nor Allum knew that the data would be destroyed five to fourteen days after the incident.

¶36 Allum also claims that the State committed a *Brady* violation when it successfully moved to quash some of Allum's subpoenas. These subpoenas were for various witnesses to attend pretrial depositions and trial itself. The Municipal Court granted the State's motion

11

and quashed Allum's subpoenas. It quashed the deposition subpoenas because Allum had not demonstrated that the witnesses would be unavailable for trial as required by § 46-15-201(1), MCA. Regarding the subpoenas for trial, the court quashed them because the anticipated testimony of the witnesses was either irrelevant or duplicative. Allum sought to call various City of Bozeman officials to testify to police policies. The court concluded that this information was irrelevant under Rules 401-403, M.R.Evid., and that any information they might provide that was germane to Allum's case was available through other witnesses. We conclude that the State did not commit a *Brady* violation in moving to quash these witness subpoenas because, again, the State did not seek to suppress favorable evidence, but was merely raising valid statutory and evidentiary concerns.

¶37 Allum correctly points out that the State did not file a sworn complaint when it commenced its prosecution. An officer signed the complaint, but it was not sworn to. Allum argues that § 46-11-102, MCA, and § 46-11-110, MCA, require the State to file a sworn complaint at the commencement of a prosecution. This is incorrect. Section 46-11-110, MCA, states, "When a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge." This language does not require a sworn complaint to be filed. Instead, it requires the court to examine a sworn complaint if one is filed. Furthermore, § 46-11-102, MCA, does not require a sworn complaint. It states that the prosecution of offenses not charged in district court "must be by complaint." A "sworn" complaint is not mentioned.

12

¶38     In arguing that our statutes require a sworn complaint in a prosecution such as in the instant case, the Dissent appeals to § 46-11-110, MCA, along with the language of § 46-11-401(3), MCA (2001).  The Dissent concedes that the 2001 legislature amended § 46-11-401(3), MCA.  However, it points out that the legislature replaced "signed on oath by a peace officer," § 46-11-401(3), MCA (1999), with "signed by a sworn peace officer."  Section 46-11-401(3), MCA (2001).  Although with this amendment the legislature eliminated the statute's requirement that a complaint filed by a peace officer be sworn, it did not alter the above-quoted § 46-11-110, MCA.  Therefore, reasons the Dissent, "In amending statutes in piece-meal fashion, the 2001 legislature confused the statutory scheme" and we should conclude that because the legislature did not alter § 46-11-110, MCA, a complaint filed by a peace officer still must be sworn.  However, here we must disagree with the Dissent on two counts.  First, the legislature obviously did mean to change the requirement that a peace officer swear to a complaint.  *State ex rel. Mazurek v. District Court*, 2000 MT 266, ¶ 18, 302 Mont. 39, ¶ 18, 22 P.3d 166, ¶ 18 ("It has long been the law that, when the Legislature amends a statute, we will presume that it meant to make some change in the existing law.").  Second, we must restate our above conclusion that § 46-11-110, MCA, itself does not require a complaint to be sworn.  Therefore, we conclude that a peace officer may file a complaint without swearing to it.

¶39     The Dissent also argues that the complaint should be dismissed because it was not sufficient to allow the court to determine the existence of probable cause. However, Allum does not raise this argument on appeal, and we therefore decline to address the issue.

13

¶40 Finally, Allum points to the fact that the Municipal Court did not hold an omnibus hearing, as required by § 46-13-110, MCA. This Court will not reverse a conviction for failure to hold an omnibus hearing without a showing of prejudice. *State v. Hildreth* (1994), 267 Mont. 423, 427, 884 P.2d 771, 774. Allum has not demonstrated any prejudice regarding the lack of an omnibus hearing.

## ISSUE SEVEN

¶41 *Whether the District Court abused its discretion in granting extra time for the prosecution to file its appellate brief.*

¶42 In Allum's appeal from the Municipal Court to the District Court, the State asked for an extension of time to file its brief. The District Court granted this motion and ordered the State to file its brief by December 11, 2002. The State did not make this deadline, and the next day, December 12, 2002, asked again for additional time. The court also granted this motion. Allum argues that when the State had not filed its brief by the required date of December 11, the court should have summarily ruled for Allum. Rule 14(c) of the Montana Uniform Municipal Court Rules of Appeal states that the failure to timely file a brief "subject[s] the appeal to summary dismissal by the district court." This language means that the appeal is "subject" to summary dismissal but does not mean that the district court must summarily dismiss the appeal. Summary dismissal is up to the discretion of the district court, and we conclude that it did not abuse its discretion in allowing an extension one day after the State's brief was due.

14

**ISSUE EIGHT**

¶43 *Whether the Municipal Court properly ordered Allum to pay costs.*

¶44 Allum contends that the Municipal Court improperly imposed witness and jury costs on him. Allum did not make this argument to the Municipal Court, and we therefore decline to address this issue.

**CONCLUSION**

¶45 We affirm the District Court's denial of Allum's appeal challenging the judgment and sentence of the Municipal Court.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice James C. Nelson dissents.

¶46 I dissent to Issues Two and Six. I would reverse and order the charges in this case be dismissed.

¶47 Taking Issue Six first, I disagree with the Court's discussion at ¶ 37 regarding the complaint. Allum was charged on January 29, 2002, with criminal trespass to property in violation of § 45-6-203, MCA (2001). The substance of the charge, written on the standard "Notice to Appear and Complaint" form, states:

16

that said defendant did purposely or knowingly or negligently commit the offense of criminal trespass to property towit [sic]: refuse to leave bank/area of store when asked.

The complaint is signed by an officer; it is not sworn to.

¶48 As the Court points out, § 46-11-102(2), MCA, requires that all offenses not charged in District Court "must be by complaint." Section 46-11-110, MCA, however, states:

> **Filing complaint**. When a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the *sworn complaint* or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge. [Emphasis added.]

Moreover, § 46-11-401, MCA, provides in pertinent part:

> **Form of charge.** (1) The charge must be in writing and in the name of the state or the appropriate county or municipality and must specify the court in which the charge is filed. The charge must be a plain, concise, and definite statement of the offense charged, including the name of the offense, whether the offense is a misdemeanor or felony, the name of the person charged, and the time and place of the offense as definitely as can be determined. The charge must state for each count the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.
>     . . . .
>     (3) If the charge is by complaint, it must be signed by a sworn peace officer, under oath by a person having knowledge of the facts, or by the prosecutor.

The 2001 Legislature amended this statute in such a fashion that there no longer is a requirement that a sworn peace officer sign the complaint under oath. Sec. 1, Ch. 389, L. 2001.

¶49 While it may have been the Legislature's intention to eliminate the need to have a peace officer sign the complaint under oath, nonetheless, the Legislature did not amend § 46-

17

11-110, MCA, which still clearly and unambiguously requires the court to examine "the sworn complaint." The Court concludes that this language does not require a sworn complaint to be filed, but rather, it requires the court to examine a sworn complaint "if" one is filed. The statute does not say that. The statute requires the court to examine affidavits "if filed." But if the only document filed is the complaint, it must be a "sworn complaint."

¶50 The Court fails to explain how Allum was charged in this case if not by complaint. At least the charging document says he was charged by a "Notice to Appear and Complaint." And, under § 46-11-102(2), MCA, a "Notice to Appear" will not suffice as a charging document,[1] as that statute requires the filing of a complaint. And, as noted, § 46-11-110, MCA, requires that the complaint that is filed must be a "sworn complaint."

¶51 Under § 46-11-401(3), MCA, the peace officer must be a "sworn" officer. Under § 46-11-110, MCA, the complaint must be sworn. In amending statutes in piece-meal fashion, the 2001 Legislature confused the statutory scheme.

¶52 The majority holds that a "sworn" complaint does not have to be signed under oath. That conclusion flies in the face of the law and the language. To "swear" means to administer an oath to a person or to take an oath. *Black's Law Dictionary* 1461 (7th ed. 1999). A "sworn statement" is one given under oath. *Black's*, at 1417. To "swear out" means to make a charge upon oath. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 863 (2d ed. 1995). "Swear" or "sworn" means to utter or take solemnly an oath or to assert

---

[1] Actually, the "Notice to Appear" simply takes the place of an arrest warrant, but here Allum was arrested.

18

as true or promise under oath. *Merriam Webster's Collegiate Dictionary* 1190 (10th ed.

1997). Apparently, in Montana, a sworn document, henceforth, does not have to be made

under oath. A judge is not to omit what has been inserted into a statute. Section 1-2-101,

MCA. The majority have done precisely that here in simply writing out of § 46-11-110,

MCA, the requirement that a complaint be sworn--i.e., made under oath. The majority is as

confused as the Legislature.

¶53    Given, however, that we must apply the statutes in this confused state, the magistrate

must examine a sworn complaint for probable cause before allowing the filing of the charges.

I know of no way that a complaint can be "sworn" unless the court puts the person signing

the complaint under oath first. The magistrate must then examine the complaint for probable

cause to allow the filing of the charges. It is undisputed that was not accomplished in this

case.

¶54    Even if the Court gets past the hurdle of an unsworn complaint, in *Sacco v. High*

*Country Independent Press* (1995), 271 Mont. 209, 896 P.2d 411, we dealt with a charging

document not unlike the one at issue here. There, the defendant was charged with violating

§ 45-6-301, MCA,

> in that said defendant did knowingly or purposely or negligently commit the
> offense of theft of photo negatives/proof sheets between Oct. 19, 1989 and 28
> June 1990 from High Country Independent Press. To wit: wildlife photos.

*Sacco*, 271 Mont. at 217, 496 P.2d at 416. On that charge we stated:

> The complaint, here, sets forth nothing but Dighans' conclusory statement that
> Sacco committed the offense of theft of the photo negatives and proof sheets.
> There was no affidavit of probable cause or other written statement of

19

probable cause before the city judge when the decision was made to issue an arrest warrant nor were there any underlying facts within the body of the complaint itself from which the magistrate could make a judicial determination of the existence of probable cause.

*Sacco*, 271 Mont. at 218-19, 496 P.2d at 417.

¶55    We then went on to state:

We hold that what appeared on the face of the complaint is an insufficient basis, as a matter of law, upon which to premise a finding of probable cause. [*State ex rel. Wicks v. District Court* (1972) 159 Mont. 434, 437, 498 P.2d 1202, 1203-04]. If the officer simply swears to his bald conclusions that the defendant committed the crime charged without either orally or in writing swearing to the factual basis for those conclusions, the magistrate has no legal basis on which to make the statutorily required finding of probable cause for the issuance of the warrant of arrest or summons (§ 46-6-201, MCA (1989)).

*Sacco*, 271 Mont. at 219, 496 P.2d at 417.  Here, the officer did not even swear to his bald conclusions.

¶56    Since § 46-11-110, MCA, requires that the court examine the sworn complaint to determine the existence of probable cause, and since there was no sworn complaint here, and, to boot, an inadequate statement from which the court could determine the existence of probable cause, in any event, I would hold that the complaint at issue must be dismissed.

¶57    Finally, while I would not need to reach the issue, I do not agree with our discussion of Issue Two.  The court's instruction was not a correct statement of the law.  The jury could have found Allum guilty of entering or remaining (1) "unlawfully in an occupied structure" or, as the Court points out, entering or remaining (2) "unlawfully in or upon the premises of another"--either or both.

¶58 The point is that the jury had to unanimously agree as to which of those charges Allum was guilty. For all we know, three of the jurors may have agreed to (1) and three to (2); maybe two agreed to (1), one to (2) and 3 to both. While there was a general unanimity instruction given, there was no specific unanimity instruction given by the court in this case. *State v. Weaver*, 1998 MT 167, ¶¶ 22-40, 290 Mont. 58, ¶¶ 22-40, 964 P.2d 713, ¶¶ 22-40.

¶59 While the Court is correct--Allum did not raise the specific unanimity issue--we, nevertheless, have held that, where, as here, this instruction is required, it is reversible error for the trial court not to give a specific unanimity instruction *sua sponte*. *Weaver*, ¶¶ 22-40.

¶60 It is the judge's sole duty to properly instruct in all cases. Indeed, we have adopted the rule that "[t]he court must instruct the jury properly on the controlling issues in the case *even though there has been no request for an instruction* or the instruction requested is defective." *Billings Leasing Co. v. Payne* (1978), 176 Mont 217, 225, 577 P.2d 386, 391 (emphasis added). This duty cannot be delegated to counsel and is especially important in criminal cases because fundamental constitutional protections are at issue. *Billings Leasing*, 176 Mont. at 224-25, 577 P.2d at 390-91. *Accord Schuff v. Jackson*, 2002 MT 215, ¶¶ 38-39, 311 Mont. 312, ¶¶ 38-39, 55 P.3d 387, ¶¶ 38-39. Because Weaver was handed down in 1998, the trial judge in this case knew or should have known of the necessity for a specific unanimity instruction here and faulting counsel does not forgive that lapse. Under *Weaver,* the failure to give the instruction *sua sponte* is reversible error.

¶61 A unanimous jury verdict is a fundamental right. Art. II, Sec. 26, Mont. Const.; *Weaver,* ¶ 26. We are abrogating our own fundamental responsibility to uphold the rights

21

of those accused of a crime by, instead, ignoring the Constitution and genuflecting at the altar of a mere rule of procedure.

¶62 Unfortunately, it is because of decisions like this that the *Weaver* rule has simply not sunk in with the defense and prosecution bars and the trial courts across the State. *See State v. Harris*, 1999 MT 115, ¶¶ 9-12, 294 Mont. 397, ¶¶ 9-12, 983 P.2d 881, ¶¶ 9-12 (and ¶¶ 35-41, Nelson, J., concurring); *State v. Hardaway*, 2001 MT 252, ¶¶ 63-72, 307 Mont 139, ¶¶ 63-72, 36 P.3d 900, ¶¶ 63-72; *State v. Pope*, 2003 MT 330, ¶¶ 66-69, 318 Mont. 383, ¶¶ 66-69, 80 P.3d 1232, ¶¶ 66-69 (and ¶¶ 71-78, Nelson, J., concurring). Our decision here to not deal with this obvious, reversible error just gives the practicing bar and the courts one more precedential basis for ignoring the *Weaver* rule.

¶63 Moreover, the *sua sponte* addition of the words "the necessary" by the court in the jury instruction did nothing to cure this defect. Half of the jurors may have thought that "the necessary" elements were found on (1) and the other half on (2). The "necessary elements" of (1) are different than the "necessary elements" of (2). Who knows what all of the jurors agreed to?

¶64 The State, as the Court concedes, must prove every element of a criminal charge beyond a reasonable doubt. In this case, that meant that the jury had to agree that every element of (1) or (2) or both was proven. Without the giving of a specific unanimity instruction we have no way of knowing what "necessary elements" the jury found.

¶65     In spite of this Opinion, I sincerely hope that practitioners do not start using this instruction. It misstates the law. It is, no doubt, confusing to the jury. And, I believe, giving this instruction will eventually require reversal of a future conviction.

¶66     I would reverse and order the charges against Allum dismissed.


/S/ JAMES C. NELSON