No. 04-434

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

MICHAEL H. DITTON,

       Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighteenth Judicial District,
                  In and For the County Gallatin, Cause No. DC 2003-204,
                  Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Michael H. Ditton, *pro se*, Bozeman, Montana

       For Respondent:

       Honorable Mike McGrath, Attorney General; Jim Wheelis,
       Assistant Attorney General, Helena, Montana

       Susan L. Wordal, Assistant City Prosecutor, Bozeman, Montana

                          Submitted on Briefs:   August 8, 2006

                                 Decided:

Filed:

_____
                 Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Michael H. Ditton (Ditton), appearing *pro se*, appeals from an order of the Eighteenth Judicial District Court, Gallatin County, affirming his conviction for driving under the influence (DUI) in Bozeman Municipal Court.  We affirm.

¶2    We restate and address the following issues on appeal:

¶3    1.  Must the complaint against Ditton be dismissed because the Municipal Court did not timely determine that there was probable cause to file the charge?

¶4    2.   Did the District Court err in affirming the Municipal Court's decisions regarding the exclusion of evidence obtained during pretrial incarceration, and not to dismiss the charge because Ditton was not provided with all information in the possession of the State?

¶5    3.  Was Ditton the victim of outrageous government conduct?

¶6    4.  Did the District Court err in affirming the Municipal Court's refusal to dismiss the case because Ditton's driver's license was reinstated?

¶7    5.  Did the District Court err in affirming the Municipal Court's denial of Ditton's motion to take judicial notice of the Americans with Disabilities Act and scientific facts concerning symptoms of insulin-dependent diabetes?

¶8    6.  Did the District Court err in affirming the Municipal Court's rulings on the admission of evidence?

¶9    7. Did the District Court err in affirming the Municipal Court's denial of Ditton's motion to dismiss?

¶10     8. Did the District Court err in affirming the Municipal Court's rulings on jury instructions?

BACKGROUND

¶11     On the evening of December 20, 2002, Ditton was involved in a car accident in Bozeman. Police Sergeant Darcy Dahle (Dahle) and Officer Travis Munter (Munter) investigated the accident. Both officers smelled an alcoholic beverage about Ditton's breath or person. Munter observed that his eyes were bloodshot and his speech slurred. Munter and Dahle both testified to Ditton's unsatisfactory performance of the standardized field sobriety tests. A preliminary alcohol screening test detected his blood alcohol content as .230 percent. Officer Munter arrested Ditton for DUI in violation of § 61-8-401, MCA. Munter gave Ditton a signed Notice to Appear and Complaint charging him with the violation. Neither officer asked him whether he was diabetic or took insulin. A video camera in a law enforcement vehicle recorded the investigation. Ditton refused to take a breathalyzer test after his arrest, leading to seizure of his driver's license as provided in § 61-8-402(4), MCA.

¶12     Munter took Ditton to the Gallatin County Detention Center. Officer Mike Wick (Wick) testified that he was rude and belligerent, and gave no indication of medical problems or injuries. Wick did not recall that Ditton demanded his release or repeatedly asked to make a phone call. To the contrary, Ditton testified that he demanded his immediate release and repeatedly asked to call his son to bring him medical supplies. Ditton was released on bail the following morning.

¶13     At his arraignment on December 23, 2002, Ditton pled not guilty. Bozeman

3

Municipal Court Judge Patricia Kyle Carlson at that time signed an order setting his case for jury trial on June 17, 2003. Munter completed an Affidavit of Probable Cause and signed it on January 28, 2003.

¶14 Ditton petitioned the District Court for the return of his driver's license. At the resulting hearing, which Ditton did not attend, the State said it would consent to the return of his driver's license without admitting any facts in the petition. On June 3, 2003, the District Court ordered that, since the State did not object, it would grant the petition without making any findings of fact.

¶15 Even though he was neither imprisoned nor otherwise restrained of liberty, as required by § 46-22-101(1), MCA, Ditton petitioned the District Court for a Writ of Habeas Corpus while the case was before the Municipal Court. He argued that the writ should issue because the Municipal Court had made no determination of probable cause. The District Court considered this petition in Gallatin County Cause No. DV-03-208. The District Court heard testimony from Municipal Judge Carlson concerning whether a probable cause determination was properly made. Following this testimony, the District Court found:

> Although not explicit in the order which was issued following the filing of [Ditton's motion to dismiss], Municipal Judge Carlson did testify she had concluded there was Probable Cause for the filing of the compliant. Although not in writing, the Municipal Court Judge did make the necessary determination under § 46-11-110 MCA that there was probable cause for filing the charge.

The District Court, based on this specific finding of fact that the Municipal Court made the necessary determination of probable cause to file the complaint, denied Ditton's

petition for habeas corpus on June 16, 2003, and closed DV-03-208.

¶16   Ditton made numerous pre-trial motions in the Municipal Court.  On June 16, 2003, the Municipal Court granted his motions to suppress the statements he made immediately prior to and after his arrest, as well as the results of the preliminary alcohol screening test.  The Municipal Court denied his motion to suppress the videotape of his arrest but ordered the audio portion not be heard by the jury.  The Municipal Court denied his motion to suppress any and all derivative evidence.  The Municipal Court again ruled that there was sufficient probable cause to support his arrest.  The Municipal Court denied Ditton's motion to dismiss based on judicial estoppel and refused to take judicial notice of a list of twenty-three[1] "Indisputable Medical Facts" he submitted.

¶17   A Municipal Court jury heard the case against Ditton on June 17, 2003.  Ditton, representing himself, argued that another car caused the accident, and that his diabetes caused his poor performance on the field sobriety tests.  He and the State disagreed regarding proper jury instructions.  The jury convicted Ditton of DUI, and he appealed to the District Court.  The District Court considered the appeal as its Cause Number DC-03-204.  By order of April 29, 2004, the District Court affirmed Ditton's conviction.  This appeal followed.  Additional facts are set out as necessary.

STANDARD OF REVIEW

¶18   A district court's review of a municipal court's orders and judgment is limited to review of the record and questions of law.  Section 3-6-110, MCA; *State v. Clark*, 2005

_____

1 Although Ditton's Motion for Judicial Notice of Indisputable Medical Facts, filed with the Municipal Court May 29, 2003, numbers 24 "facts," there are only 23 as there is no "fact" #2.

5

MT 169, ¶ 8, 327 Mont. 474, ¶ 8, 115 P.3d 208, ¶ 8. This Court reviews a district court's findings of fact to determine if they are clearly erroneous. *State v. Workman*, 2005 MT 22, ¶ 9, 326 Mont. 1, ¶ 9, 107 P.3d 462, ¶ 9. This Court reviews a district court's conclusions of law to determine whether they are correct. *State v. Polaski*, 2005 MT 13, ¶ 10, 325 Mont. 351, ¶ 10, 106 P.3d 538, ¶ 10. We review a trial court's evidentiary rulings for abuse of discretion. *Payne v. Knutson*, 2004 MT 271, ¶ 20, 323 Mont. 165, ¶ 20, 99 P.3d 200, ¶ 20. Questions of constitutional law are subject to plenary review. *State v. Webb*, 2005 MT 5, ¶ 9, 325 Mont. 317, ¶ 9, 106 P.3d 521, ¶ 9. A district court's resolution of an issue involving a question of constitutional law is a conclusion of law that we review for correctness. *State v. Mallak*, 2005 MT 49, ¶ 14, 326 Mont. 165, ¶ 14, 109 P.3d 209, ¶ 14. "The denial of a motion for a directed verdict is within the sound discretion of the trial court." *State v. Clausell*, 2001 MT 62, ¶ 28, 305 Mont. 1, ¶ 28, 22 P.3d 1111, ¶ 28 (quoting *State v. Blackcrow*, 1999 MT 44, ¶ 18, 293 Mont. 374, ¶ 18, 975 P.2d 1253, ¶ 18). We give trial courts great leeway in instructing the jury, and will overturn a jury instruction only in the case of an abuse of discretion. *Payne*, ¶ 14.

DISCUSSION

ISSUE ONE

¶19 **Must the complaint against Ditton be dismissed because the Municipal Court did not timely determine that there was probable cause to file the charge?**

¶20 Ditton argues that because the Municipal Court made no determination of probable cause until nearly six months after the arrest and the charge, this case must be dismissed.

6

¶21 Section 46-11-110, MCA, provides:

When a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge.

¶22 Ditton argues that the lack of a specific, timely order of the Municipal Court finding probable cause requires the dismissal of the DUI charge. The record in DC-03-204 does not contain a written order stating that the Municipal Court found probable cause to file the complaint prior to June 16, 2003. However, attached to Ditton's appellate brief for our consideration is the District Court's order of June 16, 2003, in DV-03-208, referred to above at ¶ 15, which is a specific finding of fact, based on evidence presented to the District Court, that Municipal Judge Carlson did indeed make the determination that there was probable cause to file the DUI charge that is required by § 46-11-110, MCA. DV-03-208 was initiated by Ditton. It concerns the same charge and the same issue which Ditton now appeals. As we have been invited to do so by Ditton, we consider the District Court's order in DV-03-208 in this appeal.

¶23 A District Court's finding of fact will not be reversed unless it is shown to be clearly erroneous. *State v. Leitheiser*, 2006 MT 70, ¶ 13, 331 Mont. 464, ¶ 13, 133 P.3d 185, ¶ 13. Ditton bears the burden, as the appellant, to establish error in the District Court's decision. *Vogel v. Intercontinental Truck Body, Inc.*, 2006 MT 131, ¶ 15, 332 Mont. 322, ¶ 15, 137 P.3d 573, ¶ 15. Ditton has called this Court's attention to the District Court's finding of fact that the necessary probable cause determination was made by the Municipal Court. However, he has not provided a transcript of the hearing at

7

which Municipal Judge Carson testified, as required by M. R. App. P. 9(b), or other record which indicates that the District Court's determination is clearly erroneous. Indeed, the inference readily drawn from the District Court's finding that Municipal Judge Carlson made the "necessary determination" of probable cause pursuant to § 46-11-110, MCA, is that the determination of probable cause was timely made, that is, at the time the charge was filed. This is also consistent with the District Court's determination that the statute was properly followed and also consistent with Municipal Judge Carlson's action setting Ditton's case for trial, which would not have been necessary without a determination of probable cause. As Ditton has not established that the District Court's finding that the requirements of § 46-11-110, MCA, were met is clearly erroneous, we will not reverse the District Court.

¶24 The District Court further noted that Municipal Judge Carlson's determination of probable cause was not made in writing. However, § 46-11-110, MCA, only requires that the finding be made, not that it be made in writing. As a practical matter, a written indication that the municipal judge has reviewed the complaint or affidavit and determined the existence of probable cause, perhaps on the order setting a case for trial, would be helpful on appellate review. We invite the Legislature to review and clarify the statutes governing this process. Otherwise, as occurred here, the municipal judge may be called upon to give testimony concerning his or her determination of probable cause, a disruption busy municipal court judges hardly need. However, on the record now before the Court, and based upon the District Court's finding of fact that the required

8

determination of probable cause was timely made, which has not shown to have been in error, we affirm the District Court.

ISSUE TWO

**¶25 Did the District Court err in affirming the Municipal Court's decisions regarding the exclusion of evidence obtained during pretrial incarceration, and not to dismiss the charge because Ditton was not provided with all information in the possession of the State?**

¶26 Ditton argues that the failure to exclude evidence obtained during his pretrial incarceration was error, as he could not gather evidence during this time. He also argues that the State failed to provide him with all requested discovery by not providing him certain photographs taken the evening of the incident.

¶27 The record does not indicate that the State collected any evidence against Ditton following its initial investigation of the accident on the evening of December 20, 2002. Ditton notes that the State made a diagram after the initial arrest. However, he neither argues, nor does the record suggest, that this diagram included any evidence collected after the initial investigation.

¶28 At trial, while cross-examining officer Dahle, Ditton handed her an envelope containing photographs. He asked her if she had taken more photographs, and she replied in the affirmative. While Ditton complains that he had not seen all of the photographs, he makes no showing that any photographs he may not have seen were either exculpatory or even relevant to any defense that he might have made.

9

¶29 Ditton also alleges that the State withheld transcripts of certain calls to the Bozeman dispatch officer regarding the traffic accident which preceded his arrest. He does not explain what exculpatory evidence these transcripts contained, but simply asserts that the State was required to provide him exculpatory evidence.

¶30 Ditton fails to show that any material he claims to have not received would be exculpatory. He thus fails to establish any violation of the State's obligation to provide him with such material. *State v. Johnson*, 2005 MT 318, ¶ 15, 329 Mont. 497, ¶ 15, 125 P.3d 1096, ¶ 15; *Gollehon v. State*, 1999 MT 210, ¶ 15, 296 Mont. 6, ¶ 15, 986 P.2d 395, ¶ 15; *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

ISSUE THREE

¶31 **Was Ditton the victim of outrageous government conduct?**

¶32 Ditton claims that the lack of a probable cause determination by a judge and the State's failure to provide him with exculpatory evidence made him a victim of outrageous government conduct. As previously explained, these two claims are groundless.

¶33 Ditton also claims that he suffered outrageous government conduct when the State incarcerated and held him incommunicado while denying him medical care.

¶34 The defense of outrageous government conduct is limited to extreme cases in which the government essentially manufactured the crime or generated new crimes merely for the sake of pressing criminal charges against the defendant. *State v. Williams-Rusch*, 279 Mont. 437, 445, 928 P.2d 169, 174 (1996) (overruled in part on other grounds by *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866). Also, the

10

defense of outrageous government conduct is a "most narrow" defense. *Williams-Rusch*, 279 Mont. at 445, 928 P.2d at 174.

¶35 Ditton's bare allegations of outrageous government conduct during the few hours of his incarceration fail to show that the State manufactured evidence concerning the DUI charge, or generated evidence of new crimes with which to charge him. He thus fails to provide sufficient evidence to meet the high standard for establishing outrageous government conduct adopted in *Williams-Rusch*.

ISSUE FOUR

¶36 **Did the District Court err in affirming the Municipal Court's refusal to dismiss the case because Ditton's driver's license was reinstated?**

¶37 Ditton refused to take a breathalyzer test after his arrest, leading to seizure of his driver's license as provided in § 61-8-402(4), MCA. He then petitioned the District Court for return of his driver's license as allowed by § 61-8-403, MCA. The State did not contest the petition and by order of June 3, 2003, the District Court granted the petition without findings of fact. Ditton claims that the District Court order effectively decided the DUI charge in his favor. He argues that the doctrines of *res judicata* and collateral estoppel both require dismissal of this case.

¶38 This Court previously defined the doctrine of *res judicata* as follows:

> The doctrine of *res judicata* states that a final judgment on the merits by a court of competent jurisdiction is conclusive as to causes of action or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

11

*Harlem Irr. Dist. v. Judicial Dist. Court*, 271 Mont. 129, 132, 894 P.2d 943, 944-45 (1995).

¶39  The District Court's order to reinstate Ditton's driver's license was not a determination on the merits of whether he was guilty of DUI. The DUI charge was not an issue in the determination of whether Ditton was entitled to have his driver's license restored. Section 61-8-403(4)(a), MCA. The doctrine of *res judicata* is not applicable.

¶40  Collateral estoppel is a form of *res judicata* which "bars the reopening of an issue in a second cause of action that has been litigated and determined in a prior suit." *Auto Parts v. Employment Relations Div.*, 2001 MT 72, § 29, 305 Mont. 40, § 29, 23 P.3d 193, § 29. Since the DUI charge was not an issue in the determination of whether he was entitled to retrieve his driver's license, collateral estoppel does not apply.

ISSUE FIVE

¶41  **Did the District Court err in affirming the Municipal Court's denial of Ditton's motion to take judicial notice of the Americans with Disabilities Act and scientific facts concerning symptoms of insulin-dependent diabetes?**

¶42  Ditton argues that the Municipal Court was required to take judicial notice of the Americans with Disabilities Act (ADA) pursuant to M. R. Evid. 201(d)(1). He also argues that the Municipal Court was required to take judicial notice of a list of 23 "facts" concerning symptoms of insulin-dependent diabetes he claims are indisputable. He contends that these failures to take judicial notice prejudiced his defense and require a reversal of his DUI conviction.

¶43    In this case the State charged Ditton with DUI.  Ditton sought to raise ADA-related matters, but failed to establish the relevance of the ADA to the DUI charge. Judicial notice is always confined to those matters which are relevant to the issues at hand. *State v. Anderson*, 211 Mont. 272, 288, 686 P.2d 193, 202 (1984).  The Municipal Court did not error in refusing to take judicial notice of the ADA.

¶44    Concerning judicial notice of facts, M. R. Evid. 201(d), must be read in conjunction with M. R. Evid. 201(b), which provides:

> Kinds of facts. A fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.

¶45    Ditton failed to establish either element set forth in M. R. Evid. 201(b) with regard to the "facts" concerning symptoms of insulin-dependent diabetes that he presented to the Municipal Court.  The accuracy of the information Ditton supplied could be reasonably questioned.  The Municipal Court could not ascertain either the correctness or the completeness of the sources of information he presented.  Admission of this information required a proper foundation, which Ditton failed to provide.  The Municipal Court therefore did not err in refusing to take judicial notice of the list of "facts" concerning symptoms of insulin-dependent diabetes presented by Ditton.

ISSUE SIX

¶46    **Did the District Court err in affirming the Municipal Court's rulings on admission of evidence?**

¶47    Ditton argues that the Municipal Court erred in refusing to admit into evidence a

13

scale diagram he created of the accident area, and in excluding an information sheet about diabetes. He also claims that the Municipal Court erred in admitting into evidence his refusal to take a breath test for alcohol, and in admitting into evidence the videotape of his stop and arrest.

¶48 The diagram proposed sought to portray Ditton's theory that he did not cause the car accident. It is not an element of DUI that an accident result. Even if the cause of the accident was relevant to the charge, Ditton suffered no prejudice from the Municipal Court's refusal to admit the diagram into evidence. He showed the diagram to the jury during the trial and explained his theory of how the accident occurred. Under this theory, the accident was not his fault, and his alcohol consumption did not contribute to it.

¶49 Ditton claims that the information sheet which he proposed, containing facts about diabetes, was admissible into evidence based on an exception to the hearsay rules. However, he does not specify which hearsay exception should apply. He merely references "multiple exceptions such as medical texts and a catch-all exception" and cites generally to Rules 801-804, M. R. Evid. It appears most likely that he bases his argument on M. R. Evid. 803(18), which deals with learned treatises. He offered no foundation to qualify the offered exhibit as a learned treatise, nor did he offer a sufficient foundation to admit the list under any exception to the hearsay rules. There was no error in excluding this exhibit.

¶50 Ditton objected to the admission of his breath alcohol test refusal claiming it was somehow expunged by the District Court's order returning his driver's license. The District Court's order entered in the separate action under § 61-8-403, MCA, did require

the Department of Motor Vehicles to remove all references to a refusal to take a breath alcohol test from his driving record, and to vacate any action related to such refusal. However, that order entered in a separate proceeding had no effect on the DUI trial. Montana allows the State to introduce evidence of an alcohol test refusal when prosecuting DUI. Section 61-8-404(2), MCA; *City of Helena v. Kortum*, 2003 MT 290, ¶ 23, 318 Mont. 77, ¶ 23, 78 P.3d 882, ¶ 23.

¶51 Ditton argues that the Municipal Court erred in allowing the State to admit into evidence the videotape of his arrest, because it violated his right to privacy. In support of this argument Ditton cites *State v. Lynch*, 1998 MT 308, 292 Mont. 144, 969 P.2d 920; *State v. Pizzichiello*, 1999 MT 123, 294 Mont. 436, 983 P.2d 888; *State v. Siegal*, 281 Mont. 250, 934 P.2d 176 (1997); and *State v. Solis*, 214 Mont. 310, 693 P.2d 518 (1984). These four cases are inapposite, however, because none of them concern a videotape made of a person on a public street. As the United States Supreme Court has explained:

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511 (1967) (citations omitted). While the Montana Constitution affords greater protection to a person's right to privacy than the United States Constitution, we have never expanded this protection to a person's actions on a public street, and we decline to do so here. The videotape captured Ditton's actions on a public street. It did not violate his right to privacy, and the Municipal Court did not err in admitting it into evidence.

15

¶52   **Did the District Court err in affirming the Municipal Court's denial of Ditton's motion to dismiss?**

¶53   Ditton argues that the Municipal Court erred in denying his motion to dismiss after the prosecution rested.[2]  He claims that his diabetes caused his poor performance on the field sobriety tests, and thus he again claims there was insufficient evidence to establish probable cause to charge him.  He supports this argument citing *Bush v. Montana Dept. of Justice*, 1998 MT 270, ¶ 22, 291 Mont. 359, ¶ 22, 968 P.2d 716, ¶ 22, where this Court reversed the implied consent suspension of the defendant's driver's license because the state lacked probable cause for his arrest.

¶54   *Bush* is readily distinguishable from the present case.  In *Bush*, the odor of an alcoholic beverage about the defendant's person was not strong, and there were no other visible signs of intoxication in the defendant's movements or speech.  *Bush*, ¶ 19.  Given such weak indicia of alcohol intoxication and the arresting deputy's failure to conduct any field sobriety tests, we concluded that the arresting deputy could not wholly disregard the defendant's explanation that he had consumed beer after the accident.  *Bush*, & 19.  In the present case, Munter and Dahle both testified they could smell the order of an alcoholic beverage on or about Ditton's breath or person.  Additionally, Munter observed that Ditton had bloodshot eyes and slurred his speech.  Munter and Dahle also had him perform three field sobriety tests, and his performance suggested intoxication.  Finally,

---

[2]   Ditton incorrectly describes this as a motion to strike.

16

the preliminary alcohol screening test detected his blood alcohol content as .230 percent. Unlike in *Bush*, there were sufficient indicia of alcohol consumption to support a finding of probable cause to arrest Ditton for DUI.

¶55   Ditton also argues that the State was required to prove that alcohol, rather than his diabetes, diminished his ability to safely operate a motor vehicle, and that the State failed to carry such burden of proof. He provides no authority for this assertion. The State need only prove the elements of the offense as defined under a criminal statute to obtain a conviction. *State v. Kaske*, 2002 MT 106, ¶ 26, 309 Mont. 445, ¶ 26, 47 P.3d 824, ¶ 26. Ditton was charged under § 61-8-401, MCA, and the State presented sufficient evidence to sustain the charge. His allegations that his diabetic condition caused him to appear intoxicated were a matter of defense. These allegations were presented to the jury, and rejected by the jury. The Municipal Court did not err when it denied Ditton's motion to dismiss. Section 46-16-403, MCA; *Clausell*, ¶ 28.

ISSUE EIGHT

¶56   **Did the District Court err in affirming the Municipal Court's rulings on jury instructions?**

¶57   Ditton also argues that the Municipal Court erred in refusing to instruct the jury concerning the effect of the ADA. Having determined that the ADA is not relevant to any issue in this case, we decline to further consider this argument.

¶58   Ditton assigns error to the Municipal Court's Instruction No. 3. He claims the court erred in refusing to instruct the jury that in order to convict him of DUI it must find that alcohol caused him to be impaired "more than to the slightest degree."

¶59 We previously concluded that, in Montana, a jury need not be instructed that a driver must be impaired more than to the slightest degree. *State v. Polaski*, 2005 MT 13, ¶ 21, 325 Mont. 351, ¶ 21, 106 P.3d 538, ¶ 21.

¶60 Ditton next argues that Instruction No. 7, regarding the opinions offered by expert witnesses, was incorrect. He argues that Munter and Dahle, who testified to their opinions concerning the cause of the accident and his condition, lacked the expertise to distinguish between a diabetic's symptoms and alcohol intoxication.

¶61 When the proper foundation has been laid, this Court has allowed a law enforcement officer to testify as an expert regarding the cause of an accident and whether the driver had been driving under the influence of alcohol. *State v. Gregoroff*, 287 Mont. 1, 4-7, 951 P.2d 578, 580-82 (1997). We allow such testimony because of the officer's extensive training and experience. *Gregoroff*, 287 Mont. at 4-7, 951 P.2d at 580-82. In the present case, the State laid a foundation that both Munter and Dahle had extensive training and experience in DUI investigation and Dahle had training and experience in accident investigation. Thus, the Municipal Court properly allowed them to express their opinions concerning the cause of the accident in question, and whether Ditton drove under the influence of alcohol.

¶62 Ditton's contention that Munter and Dahle were not qualified to give their opinion because they could not distinguish between a diabetic's medical symptoms and alcohol intoxication is a matter for cross-examination attacking the weight of their testimony. Instruction No. 7 instructed the jury to consider the circumstances and give the opinions such credence as it found proper. Giving Instruction No. 7 was not error.

18

CONCLUSION

¶63    We affirm the order of the District Court of the Eighteenth Judicial District,

Gallatin County, dated April 29, 2004, affirming Ditton's conviction in Municipal Court.


                                        /S/ JOHN WARNER



We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson dissents.

¶64 I dissent from the Court's Opinion. I would reverse and remand with instructions that the charge against Ditton be dismissed with prejudice. I would do so for the following reasons.

## INTRODUCTION

¶65 The dispositive issue in this case is the *timeliness* of the Municipal Court's determination that probable cause existed to allow the filing of the driving under the influence charge against Ditton. The issue is not whether the court *actually made* a probable cause determination—it is undisputed that the court did indeed make that determination. The question is whether the court did so pursuant to the sequence mandated by § 46-11-110, MCA.

¶66 In answering this question, the Court "infer[s]" from the District Court's finding that a probable cause determination *was made* by the Municipal Court[1] that the determination *was timely*. In so doing, the Court reads into the record facts which simply are not there. Indeed, the Court's factual findings are without any support whatsoever in the record and are not based on any finding of fact or conclusion of law made by the District Court.

¶67 This Court's *sua sponte* fact-finding with respect to the timeliness issue flies in the face of what we said in two very recent decisions. In *In re Marriage of Jacobsen*, 2006

---

[1] For clarification, this finding (that a probable cause determination *was made* by the Municipal Court) was entered in DV 03-208, a habeas corpus proceeding initiated by Ditton. The appeal before us, by contrast, is from DC 03-204, Ditton's appeal (to the District Court from the Bozeman Municipal Court) of his conviction for driving under the influence of alcohol.

MT 212, \_\_\_\_ Mont. \_\_\_\_, \_\_\_\_ P.3d \_\_\_\_, we stated that " '[a]dequate findings and conclusions are essential for without them this Court is forced to speculate as to the reasons for the [lower court's] decision. Such a situation is not a healthy basis for review.' " *Jacobsen*, ¶ 19 (quoting *Jones v. Jones*, 190 Mont. 221, 224, 620 P.2d 850, 852 (1980) and citing as illustrative of this point *In re Marriage of Converse*, 252 Mont. 67, 71-72, 826 P.2d 937, 939-40 (1992), and *In re Marriage of Keating*, 212 Mont. 462, 467, 689 P.2d 249, 252 (1984)).

¶68 Similarly, in *Snavely v. St. John*, 2006 MT 175, 333 Mont. 16, 140 P.3d 492, we reversed the district court because of its failure to make adequate findings of fact in an injunction proceeding. We stated that it was "not our job to make findings of fact or conclusions of law in the face of the trial court's failure to do so." *Snavely*, ¶ 19.

¶69 Notwithstanding, the Court's Opinion articulates no principled basis or supporting authority that allows us to do the trial court's job of making findings of fact where our settled jurisprudence—referred to above—prohibits precisely that. Moreover, that we would do so on the dispositive legal question in the face of a record that is absolutely contrary to those findings is inexcusable. The Court has turned the appellate function on its head.

## DISCUSSION

¶70 Section 46-11-110, MCA, provides:

> **Filing complaint.** When a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge.

21

¶71 This statute clearly and unambiguously requires that the probable cause determination be made *before* the charge is filed. *See State v. Johnson*, 276 Mont. 447, 451, 918 P.2d 293, 295 (1996) ("Montana law provides that *before* any criminal charge can be brought against an individual or an arrest made, probable cause to believe that the person has committed the crime is required." (emphasis added) (citing §§ 46-11-110 and 46-6-201, MCA)). It is a court's statutory duty to examine the complaint "to determine whether probable cause exists *to allow* the filing of a charge." Section 46-11-110, MCA (emphasis added). In other words, until a court makes the probable cause determination, the charge may not be filed.

¶72 Here, the record establishes that the Municipal Court's determination that there was probable cause to support the charge against Ditton was not made until nearly six months *after* the charge was filed. Specifically, the record (which includes a tape-recording of Ditton's initial appearance in the Municipal Court) reflects the following: on the evening of December 20, 2002, Ditton was arrested; later that evening, he was "charged" with driving under the influence and called to answer in court for this offense by way of a "Notice to Appear and Complaint"; he was arraigned at his initial appearance on December 23, 2002, and pled not guilty; during the initial appearance, the Municipal Judge declined to rule on Ditton's requests for a probable cause determination but nevertheless "filed" the charge against him and set a trial date; the arresting officer completed a probable cause affidavit *over a month later* on January 28, 2003; and, finally, on June 16, 2003, the day before Ditton's jury trial, the Municipal Judge ruled

that there was probable cause to file the charge alleged in the Notice to Appear and Complaint. This is the actual record by which this Court is bound.

¶73 Given these facts, the statutory sequence prescribed by § 46-11-110, MCA—namely, (1) the complaint is presented to the court; (2) the court examines the sworn complaint and any affidavits filed; and, lastly, (3) the court, from its examination, determines whether probable cause exists *to allow the filing of the charge*—was completely ignored in this case.

¶74 As already noted, the record reflects that Ditton was charged on December 20, 2002, by way of a "Notice to Appear and Complaint." This form has a place for the officer to swear out the charge. This jurat provides that the Complaint was presented to a judge or notary and that the officer swore that the charge was true. *See State v. Allum*, 2005 MT 150, ¶¶ 37-38, 327 Mont. 363, ¶¶ 37-38, 114 P.3d 233, ¶¶ 37-38 (stating that under §§ 46-11-110 and 46-11-401(3), MCA, the Complaint did not need to be sworn, as long as the officer was). Here, however, the jurat was never completed. Indeed, the record establishes that the officer did not swear that there was probable cause to believe that the charge was true until a month later, on January 28, 2003, in an Affidavit of Probable Cause. This Affidavit was then filed on January 31, 2003, with the State's response to Ditton's Motion to Dismiss. The Municipal Court judge, for her part, did not get around to making the probable cause determination until nearly five months after that. Again, this is the actual record before us.

¶75 Significantly, the Bozeman City Prosecutor acknowledged in the State's January 31, 2003, response to Ditton's Motion to Dismiss that the Municipal Court's probable cause determination, in fact, had been delayed:

> In this case, the delay in the determination is two-fold. The first being the Defendant was released . . . .
> The second delay is that the State, because of the absence of the Undersigned, was not specifically aware of one problem: the lack of a filed [Affidavit of Probable Cause]. The State first requested an extension to review this case, which was granted, and then in reviewing this case ultimately determined this flaw and obtained what had inadvertently not been filed. That document is now attached [to this Response].

This explanation only further establishes that the probable cause determination was not made until long *after* the charge against Ditton had been filed on December 23, 2002, and that the statutory sequence prescribed by § 46-11-110, MCA, therefore, was not followed.

¶76 The Court's Opinion correctly recognizes timeliness as the crux of the matter here. The Court identifies the issue by asking, "Must the complaint against Ditton be dismissed because the Municipal Court did not *timely* determine that there was probable cause to file the charge?" (emphasis added). Yet, in answering this question, the Court makes a critical error: it mischaracterizes the record by stating that the District Court (in the habeas corpus proceeding) made a "finding of fact that the required determination of probable cause was *timely* made" (emphasis added).[2]

---

[2] Incidentally, whether the required determination of probable cause was "timely" made is a conclusion of law, not a finding of fact. The relevant "facts" here are *when* the determination of probable cause was made and *when* the charge against Ditton was filed. We then apply the statute to those facts to ascertain whether the probable cause determination was made in conformance with the statute—a conclusion of law.

24

¶77 The District Court's only findings on this issue are as follows:

> Municipal Judge Carlson had occasion to review an Affidavit of Probable Cause filed with the State's response to Petitioner's Motion to Dismiss. Although not explicit in the order which was issued following the filing of that motion, Municipal Judge Carlson did testify she had concluded there was Probable Cause for the filing of the complaint. Although not in writing, the Municipal Court Judge did make the necessary determination under §46-11-110 MCA that there was probable cause for filing the charge.

¶78 Nowhere in these findings does the District Court state when Judge Carlson's probable cause determination was made, let alone whether it was made in a *timely* fashion. Nor does the court state, as this Court asserts, that the statute was "properly followed." Rather, the District Court merely found that Municipal Judge Carlson "had occasion" to review the officer's Affidavit of Probable Cause—though when she did so is not stated, but it clearly happened after the charge against Ditton was filed (on December 23, 2002), given that the Affidavit of Probable Cause was filed on January 31, 2003, (with the State's response to Ditton's Motion to Dismiss). The court further found that Judge Carlson (at some point in time) concluded there was probable cause for the filing of the complaint and that Judge Carlson (again, at some point in time) made the determination required by § 46-11-110, MCA, that there was probable cause for filing the charge.

¶79 But the issue of timeliness is not addressed at all—not even by implication, as this Court asserts. Granted, according to the District Court, the Municipal Court judge made the "necessary determination" under § 46-11-110, MCA, "that there was probable cause for filing the charge." However, as explained above, § 46-11-110, MCA, required the

Municipal Court to make that "necessary determination" at a particular time—namely, *before* the filing of the charge. Section 46-11-110, MCA ("[T]he court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists *to allow* the filing of a charge." (emphasis added)). Accordingly, a post-filing (i.e., after-the-fact) determination that there was probable cause for filing the charge—which the record shows to be the case here—directly contravenes the statutory mandate.

¶80     As a matter of fact, then, this Court is demonstrably wrong in stating that the District Court found that Municipal Judge Carlson's determination was "timely" made. Nowhere does the actual record before us demonstrate that Judge Carlson made a probable cause determination *before* filing the charge. Rather, the "finding" that the probable cause determination was "timely made" is this Court's alone, unfortunately created from whole cloth and ignoring the actual record that is to the contrary.

¶81     Indeed, this Court's finding of timeliness is merely an "inference readily drawn" from the District Court's finding that "the Municipal Court Judge did make the necessary determination under §46-11-110 MCA that there was probable cause for filing the charge." Specifically, the Court infers that the determination of probable cause was made "at the time the charge was filed." However, aside from the fact that we should not be "infer[ring]" the answers to the dispositive legal questions before us, the Court's inference is unsustainable.

¶82     For one thing, the Court (at ¶ 23) has rewritten and augmented the District Court's finding to state more than it does—specifically, "that the statute was properly followed." As already noted, the District Court made no such determination. Moreover, one can

26

hardly infer—let alone infer "readily"—that Judge Carlson made the "necessary determination" of probable cause "at the time the charge was filed" when the record establishes precisely the opposite. In particular, the Court ignores the facts that the charge against Ditton was filed on December 23, 2002, during his initial appearance; that the Municipal Judge declined during that proceeding to rule on Ditton's requests for a probable cause determination; that the jurat on the "Notice to Appear and Complaint" was *never* completed; that the arresting officer's probable cause affidavit was filed over a month after the charges were filed; and that, due to this "delay," as the Bozeman City Prosecutor put it, Judge Carlson made a belated determination of probable cause on June 16, 2003—all contrary to this Court's readily-drawn inference.

¶83    The Court criticizes Ditton for not challenging the District Court's "finding of fact that the required determination of probable cause was timely made." Not surprisingly, Ditton cannot challenge this "finding" because the District Court *never made* it. Rather, as just discussed, the finding was "infer[red]" by this Court. Thus, the Court is wrong to fault Ditton for "not provid[ing] a transcript of the hearing . . . or other record which indicates that the District Court's [finding that the required determination of probable cause was timely made] is clearly erroneous." Ditton need not show that this finding was clearly erroneous[3] because no such finding was ever made.

_____

[3] Contrary to the standard of review articulated by the Court, we are actually presented with a mixed question of law and fact—i.e., whether § 46-11-110, MCA, was violated in light of the established, record-based facts. Thus, we must apply a de novo standard of review rather than the clearly erroneous standard which the Court applies here. *Duffy v. State*, 2005 MT 228, ¶ 10, 328 Mont. 369, ¶ 10, 120 P.3d 398, ¶ 10. But even under the clearly erroneous standard,

¶84 The Court is also mistaken to rely on the fact that "§ 46-11-110, MCA, only requires that the finding be made, not that it be made in writing." While it is true that this statute does not explicitly require that a probable cause determination be memorialized in writing, this fact is wholly irrelevant to the case before us because the sole issue here is the *timeliness* of the determination, not whether it was in writing.

¶85 Again, we are bound by the actual record on appeal. This record demonstrates that the statutory scheme enacted by the Legislature was violated. As noted above, § 46-11-110, MCA, requires that probable cause for the filing of a criminal charge be determined *before* the charge is filed. Here, the arresting officer did not swear that there was probable cause for the arrest until over a month *after* the charge was filed and Ditton was arraigned. And the Municipal Court did not determine that probable cause existed for filing the charge against Ditton until nearly five months later.

¶86 Having determined that the Municipal Court violated the mandate of § 46-11-110, MCA, I must, necessarily, turn to the issue of what remedy should be employed here.

¶87 This Court presumes prejudice in some circumstances. *See*, *e.g.*, *State v. Lamere*, 2005 MT 118, ¶ 25, 327 Mont. 115, ¶ 25, 112 P.3d 1005, ¶ 25 (structural errors, which are defects in the framework within which a trial proceeds, are presumptively prejudicial because they cannot be qualitatively or quantitatively weighed against the admissible evidence introduced at trial). The violation of § 46-11-110, MCA, is one such

any finding by the District Court that Judge Carlson made a determination of probable cause "at the time the charge [against Ditton] was filed" is clearly erroneous on the actual record before us.

28

circumstance. I base this conclusion on the critical, but often overlooked, role that this statute plays in the administration of criminal justice in Montana.

¶88    Thanks to the Legislature's enactment of § 46-11-110, MCA, citizens are assured that the government cannot put them to the time and expense of defending against criminal charges unless probable cause exists for filing those charges. Of course, this assurance exists only to the extent that the lower courts do their duty under § 46-11-110, MCA, and to the extent that this Court enforces this statute on appeal.

¶89    Section 46-11-110, MCA, obligates courts to screen out allegations which lack probable cause. Thus, this statute requires that courts serve as a check on prosecutors, ensuring that prosecutors do not act without restraint in leveling charges against citizens. Obviously, this check is even more important where, as here and in tens of thousands of cases each year across Montana, police officers, instead of prosecuting attorneys, level the charges.

¶90    The assessment and determination of probable cause is a vital judicial function because of the enormous power wielded by the prosecutorial arm of government—a power which places a great burden on citizens (some of whom are ultimately acquitted) and can put them at risk of deprivation of "life, liberty, or property," Mont. Const. art. II, § 17. In fact, the function of § 46-11-110, MCA, is reflective of one of the "fundamental values" of our criminal justice system: "our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the

29

individual to shoulder the entire load.' " *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596-97 (1964).

¶91 Indeed, our criminal justice system would certainly be an ominous mechanism if it allowed for filing charges without the minimal showing of probable cause. Criminal charges are akin to a "sword of Damocles" hanging over a citizen's head until the person has had his or her day in court. No person should have to suffer that sword *before* a judge determines that probable cause exists to support the filing of the charges. Forcing an individual to defend against criminal charges when no probable cause existed to file the charges in the first place is one of the worst injustices possible in our criminal justice system. When a court fails to make the timely probable cause determination mandated by § 46-11-110, MCA, it creates the risk of facilitating such an injustice.

¶92 Thus, given the vitally important nature of a probable cause determination to allow the filing of charges, I would hold that a violation of § 46-11-110, MCA, is so inherently and substantially prejudicial that it violates the due process guarantee of Article II, Section 17, of the Montana Constitution, thus requiring dismissal of the charges filed in each instance.

## CONCLUSION

¶93 I cannot agree with the Court's decision here. The Court creates from whole cloth critical findings on the dispositive timeliness issue in the face of the actual record, which is contrary to those findings. Our jurisprudence does not permit this approach; basic fairness to the defendant does not allow this approach; and constitutional due process most certainly does not license what this Court does here.

¶94 Because on the record here the Municipal Court undisputedly violated § 46-11-110, MCA, by not making a probable cause determination *before* the driving under the influence charge was filed against Ditton, I would reverse, remand, and order that the charge against Ditton be dismissed with prejudice. I dissent from our failure to do so.

/S/ JAMES C. NELSON

Chief Justice Karla Gray and Justice Patricia O. Cotter join in Justice James C. Nelson's dissent.

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER